Raymond L. REESE,
Petitioner-Appellant,

v.

UNITED STATES BOARD OF PA-
ROLE, and J. Pat Madrid, United
States Marshal, Respondents-Appel-
lees.

Richard Arthur MARINE,
Petitioner-Appellant,

v.

Maurice H. SIGLER, Chairman, United
States Board of Parole, et al.,
Respondents-Appellees.

Jerry Lee MILLER,
Petitioner-Appellant,

v.

UNITED STATES BOARD OF PA-
ROLE and Warden, U. S. P., McNeil
Island, Respondents-Appellees.

Nos. 74–2418, 74–2541 and 74–2545.

United States Court of Appeals,
Ninth Circuit.

Jan. 12, 1976.

Rehearing and Rehearing En Banc
Denied April 8, 1976.

Duniway, Circuit Judge, filed a sep-
arate concurring and dissenting opinion.

See also 162 U.S.App.D.C. 156, 498
F.2d 698.

232

Robert Plotkin, Mental Health Law Project, Washington, D. C., for appellant in 74–2418 & 74–2545.

Allen Ressler and Richard D. Emery, Prison Legal Services Project, Seattle, Wash., for appellant in 75–2545.

Richard Arthur Marine, in pro. per.

Stan Pitkin, U. S. Atty., Tacoma, Wash., for appellee in 74–2541 & 74–2545.

William C. Smitherman, U. S. Atty., Phoenix, Ariz., for appellee in 74–2418.

## OPINION

Before MOORE,* DUNIWAY and TRASK, Circuit Judges.

TRASK, Circuit Judge:

Reese, Marine and Miller appeal the decisions of the district courts denying their respective petitions for habeas corpus. Because the cases when appealed presented the same issue, they were consolidated for review. Appellant Miller, however, has since been unconditionally released from federal custody and his case has thus been rendered moot. *See North Carolina v. Rice,* 404 U.S. 244, 92

---

* The Honorable Leonard P. Moore, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

S.Ct. 402, 30 L.Ed.2d 413 (1971). We consider the appeals of Reese and Marine.

*Reese*

Appellant Reese was convicted of a crime in the United States District Court for the District of Utah in 1964 and sentenced to serve two 5-year consecutive terms. In September 1972, he was released on parole pursuant to 18 U.S.C. § 4164 with 966 days remaining on his sentence. In April 1973, he was convicted of first degree burglary by an Arizona court and sentenced to a ten to twelve year term in the Arizona State Prison, which sentence he is now serving. The United States Board of Parole then issued a parole violator warrant for Reese and forwarded it to the United States Marshal in Arizona. On May 4, 1973, the Marshal filed a detainer with the Arizona State Prison. Reese inquired of the probation office as to a date for his revocation hearing and by reply was informed by the United States Board of Parole, under date of June 1, 1973, that the Board "plans to review the status of your outstanding warrant in April 1974." The letter did not mention a revocation hearing. On June 20, 1973, appellant filed a petition for a writ of habeas corpus in the United States District Court for the District of Columbia. The case was ultimately transferred to the District of Arizona where a response was filed to the petition and the petition denied upon the authority of *Vladovic v. Parker,* 455 F.2d 495 (9th Cir. 1972). From that denial this appeal was taken.

*Marine*

On October 31, 1967, petitioner Richard A. Marine was sentenced in the United States District Court for the Western District of Missouri to a term of 5 years. Thereafter, on March 23, 1971, he was released from custody under the mandatory good-time release provisions of 18 U.S.C. § 4164.[1]

---

1. 18 U.S.C. § 4164 provides as follows:
   "A prisoner having served his term or terms less good-time deductions shall, upon

On March 13, 1972, petitioner, then a parolee, was convicted of bank robbery in the United States District Court for the Northern District of California and sentenced to a term of incarceration of 15 years at the United States Penitentiary at McNeil Island, Washington. Shortly after this occurred the United States Board of Parole issued a parole revocation warrant and, based thereon, a detainer for the violation of the terms of his parole for the conviction in Missouri, to take effect when he was released from his subsequent detention. No revocation hearing was held as a basis for the detainer and this petition under 28 U.S.C. § 2255 seeks its dismissal upon that ground. The district court denied the petition and this appeal was taken to review that action.

In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court considered the right of a parolee to be heard before revoking his parole. There, the Court held that the Due Process Clause of the Fourteenth Amendment did apply to parole revocations and outlined at least some of the procedural protections the parolee is entitled to claim. Two hearings were held to be required. The first hearing must be held at or about the date of arrest and was described as a preliminary hearing. The purpose of the first hearing is to determine whether reasonable ground exists for revocation of parole. It should be conducted not by the parole officer but by some person other than the one dealing with the case. The parolee should be given notice of the time, place and purpose of the hearing and of the parole violations which have been alleged. Ordinarily the informant who has given the adverse information should be present for questioning, and the hearing officer should prepare a summary of the

proceedings and determine therein whether in his judgment there is probable cause to hold the parolee for final decision of the parole board. Thereafter, there must be a final hearing, the purpose of which is to determine whether revocation in fact should be made. This would involve the merits of the claimed parole violation and any circumstances in mitigation. *Id.* at 485–490, 92 S.Ct. 2593. The procedural requirements of due process in that final hearing are also set out. *Id.* at 489, 92 S.Ct. 2593.

The facts upon which the revocation was based in Morrissey's case were facts developed by the parole officer and set out in a report filed with the state parole board. The parole officer recommended that parole be revoked because of continual violation of parole rules. *Id.* at 473, 92 S.Ct. 2593. Morrissey asserted that he received no hearing prior to revocation of parole. The Supreme Court reversed and remanded for further proceedings.

*Morrissey* was soon followed by *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Involved in this case was a question of revocation of probation instead of parole. The Court held that there were no significant due process distinctions between probation and parole and followed its earlier decision in *Morrissey v. Brewer, supra.*

Neither in *Reese* nor in *Marine* under consideration here has a parole revocation hearing been held. However, no hearing has been denied, and we assume that when retaken upon the Parole Board's warrant, a hearing will be held as required under 18 U.S.C. § 4207.[2]

The issue is joined upon the question as to how soon such a hearing must be held after either the detainer has issued or actual custody taken. The appellants

release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days."

2. 18 U.S.C. § 4207 provides in pertinent part:
"A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an

opportunity to appear before the Board, a member thereof, or an examiner designated by the Board."

argue that hearing should have been held promptly upon the warrant and in the case of Marine that the Board of Parole be directed "to release any and all claim they may have against appellant as a mandatory release violator."

■ Neither the statute, 18 U.S.C. § 4207, nor the regulations, 28 C.F.R. § 2.53,[3] specify when a hearing upon an asserted parole violation shall take place, if at all. The Court in *Morrissey* states that the revocation hearing (as distinguished from the probable cause hearing) must be tendered within a reasonable time after the parolee is taken into custody. 408 U.S. at 488, 92 S.Ct. 2593. But it appears clear that *Morrissey* was written within the framework of a situation where the facts upon which the entire parole revocation proceeding is based could be contested by the alleged violator. It was that uncertainty which due process required to be promptly resolved by a probable cause hearing and a subsequent final hearing. And it was at that prompt hearing that the alleged violator was to be provided with a minimum of the tools of procedural protection such as the right to notice, statement of charges, etc., as well as at the subsequent decisional hearing. We do not find the same

reasons either appropriate or compelling to the case of a parole violator who has been convicted of a subsequent crime or is confined upon his own plea of guilty in open court.

■ The argument is made that memories may become vague and evidence lost and thus prejudice the parolee. In the case of a revocation based upon the parolee's conduct which may have been charged by letters or oral complaints to the parole officer and contested by the parolee, this argument is clearly forceful. It lacks persuasion when urged by a parolee who has been convicted upon trial or plea of guilty in a state or federal court. The parole officer is then fairly entitled to assume that all evidence upon which the parolee was legally entitled to rely was presented and considered.

This situation was anticipated in *Morrissey v. Brewer, supra,* when the Court said:

"Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." 408 U.S. at 490, 92 S.Ct. at 2605.

Another contention is that the parolee is entitled to present mitigating circum-

---

**3.** 28 C.F.R. § 2.53 provides as follows:

"(a) In those instances where the prisoner is serving a new sentence in an institution, the warrant may be placed there as a detainer. Such prisoner shall be advised that he may communicate with the Board relative to disposition of the warrant, and may request that it be withdrawn or executed so his violator term will run concurrently with the new sentence. Should further information be deemed necessary, the Regional Director may designate a hearing examiner panel to conduct a dispositional interview at the institution where the prisoner is confined. At such dispositional interview the prisoner may be represented by counsel of his own choice and may call witnesses in his own behalf, provided he bears their expenses. He shall be given timely notice of the dispositional interview and its procedure.

"(b) Following the dispositional review the Regional Director may:

"(1) Let the detainer stand;

"(2) Withdraw the detainer and close the case if the expiration date has passed;

"(3) Withdraw the detainer and reinstate to supervision; thus permitting the federal sentence time to run uninterruptedly from the time of his original release on parole or mandatory release.

"(4) Execute warrant, thus permitting the sentence to run from that point in time. If the warrant is executed, a previously conducted dispositional interview may be construed as a revocation hearing.

"(c) In all cases, including those where a dispositional interview is not conducted, the Board shall conduct annual reviews relative to the disposition of the warrant. These decisions will be made by the Regional Director. The Board shall request periodic reports from institution officials for its consideration."

This regulation is substantially similar to the former one which was in effect for the appellants in this case (formerly 28 C.F.R. § 2.37, revised February 1975).

stances. Mitigating circumstances, like beauty, may be found in the eyes of the beholder, and no doubt there are few, if any, suffering penal confinement who do not find such circumstances to explain their own plight. This is not to gainsay that in some cases those circumstances may be sound and constitute convincing material to present to the parole board. There is nothing, however, in either petition before us here suggesting that there are mitigating circumstances, or, if so, what they are. It is difficult to imagine just what Reese can claim as mitigating his parole violation crime of first degree burglary, or what Marine can claim as mitigating his parole violation crime of bank robbery. It is also difficult to relate *Morrissey v. Brewer* to either petitioner here. There, the cases were both state convictions with subsequent parole. In each case, parole was attempted to be revoked not on the basis of a subsequent arrest and conviction, but on the strength of a parole officer's report asserting a number of violations of restrictions, most of which could be subject to controversion. In outlining the purpose of the parole system and its application to the case under scrutiny, the Supreme Court noted that the purpose of the parole system

> . . . is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed. . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." 408 U.S. at 477, 92 S.Ct. at 2598.

▮ Nor has either petitioner indicated in his petition how he might be otherwise prejudiced or suffer injury by the failure of the parole board to promptly conduct a disposition hearing. There may be sound policy reasons for the Board to defer such a hearing to determine whether the petitioner's most recent violation is evidence of total incorrigibility or whether the passage of time will disclose rehabilitative prospects. If a determination of revocation is not made prior to the completion of the subsequent conviction, it must be made after the detainer is executed. 18 U.S.C. § 4207.[4]

Prior to that hearing the regulations provide that in those instances where a detainer is requested and a request is made by the petitioner that the parole violation warrant be withdrawn or executed, "the Regional Director *may* designate a hearing examiner panel to conduct a dispositional interview at the institution where the prisoner is confined." 28 C.F.R. § 2.53(a) (emphasis added). Subsection (c) of the same section then continues:

> "In all cases, *including those where a dispositional interview is not conducted,* the Board shall conduct annual reviews relative to the disposition of the warrant. These decisions will be made by the Regional Director. The Board shall request periodic reports from institution officials for its consideration." (Emphasis added).

▮ It thus appears clear that the regulations for the operation of the parole department do not contemplate that the prisoner in every case of a parole violation detainer shall have a hearing *prior* to the time he is retaken pursuant to 18 U.S.C. § 4207. During the interim the Board "shall conduct annual reviews relative to the disposition of the warrant," and "shall request periodic reports

---

4. 18 U.S.C. § 4207 provides as follows:

"A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board.

"The Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof.

"If such order of parole shall be revoked and the parole so terminated, the said prisoner may be required to serve all or any part of the remainder of the term for which he was sentenced."

from institution officials for its consideration." Our examination of the statute and the regulations convinces us that the parolee who violates his parole by committing another crime for which he has been convicted and imprisoned is not a forgotten man of the federal penal system. His welfare is under a coordinated plan of the United States Board of Parole, which is essentially different from the circumstances which befell the parolees in *Morrissey* and the probationer in *Gagnon,* but which is not lacking in due process.

The Supreme Court in *Morrissey v. Brewer* pointed out the close personal relationship between the parolee and his parole officer whose function was to offer guidance through the parole period. The broad discretion of the parole officer to evaluate infractions of parole and attitudes of adjustment was emphasized. Thus, the Court begins with the need for the first inquiry as to whether or not the parolee did in fact violate the conditions of his parole, either general or specific, and thence proceeds to the second and more complex step which is the hearing to decide what to do about it.

> "Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law. Society thus has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions." 408 U.S. at 484, 92 S.Ct. at 2601 (citation omitted).

*Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), is not contra to a disposition that would permit deferral of a final revocation hearing. The primary issue there was the application of *Morrissey* to the case of a probationer instead of a parolee and the Court held there was no difference. Scarpelli,

on probation after a plea of guilty to a charge of armed robbery, had his probation revoked without a hearing on charges of associating with known criminals and sustaining an arrest for burglary, but in his habeas proceeding he asserted that his statement admitting the burglary was made under duress and was false. *Id.* at 780, 93 S.Ct. 1756. Thus the need for the preliminary hearing to establish the facts and the final decisional hearing was the same as in *Morrissey.*

Unfortunately, the law of the inferior courts of the United States is not consistent. Some of the differences are, upon close examination, reconcilable by the differences in facts. In others, statutory interpretations have led to conflicting conclusions.

In *Cooper v. Lockhart,* 489 F.2d 308 (8th Cir. 1973), the court was concerned with the failure of the State of Michigan to promptly process to a conclusion its detainer against a parole violator who was convicted during his parole period of a crime in the State of Arkansas and confined there. The decision of necessity does not discuss due process within the framework disclosed by the statutes of the United States or the regulations promulgated thereunder for the handling of parole violators of the United States penal system. Another aspect of *Cooper,* not present here, is that while there was a subsequent conviction, the detainer was apparently not based upon it.[5] We therefore hesitate either to compare it or be critical of it. *Sutherland v. District of Columbia Board of Parole,* 366 F.Supp. 270 (D.D.C.1973), considers a factual situation similar to *Marine v. Sigler* before us, but makes no mention of the statutes and regulations or the due process which we find they afford. *See also Jones v. Johnston,* 368 F.Supp. 571 (D.D.C.1974). On the contrary, the Courts of Appeals of the Fourth Circuit

---

5. See note 1 and the text accompanying. While this applies to Cooper (whose case was held to be moot) and not to Williams (whose case was decided), the court appears to consider the factual background of both to be the same. If so, it is one where the issue is "whether there should exist an exception for a parole violator who is incarcerated in another state." 489 F.2d at 312.

in *Gaddy v. Michael,* 519 F.2d 669 (4th Cir. 1975); the Fifth Circuit in *Cook v. United States Attorney General,* 488 F.2d 667 (5th Cir. 1974), *cert. denied,* 419 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75 (1975); the Sixth Circuit in *Burdette v. Nock,* 480 F.2d 1010 (6th Cir. 1973); and the Tenth Circuit in *Small v. Britton,* 500 F.2d 299 (10th Cir. 1974), favor the view we have taken although not always upon the same reasoning.

Here both Reese and Marine were on federal parole and the statutes and regulations of the federal parole system apply to them. We find no denial of due process as to either and affirm the judgment.

Judgment affirmed.

DUNIWAY, Circuit Judge (concurring and dissenting):

In *Miller,* No. 74–2545, I concur. However, I am unable to concur in *Reese,* No. 74–2418, or *Marine,* No. 74–2541.

I cannot accept the view that, where the parole violation is based upon conviction of a crime by the parolee while he is on parole, and results in a detainer filed with the jurisdiction having him in custody under the new conviction, an early parole revocation hearing is not required by *Morrissey v. Brewer,* 1972, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. In the first place, as the Fourth Circuit has recently pointed out, the parolee may wish to contest the *fact* of the conviction, as distinguished from the *validity* of the conviction. *Pope v. Chew,* 4 Cir., 1975, 521 F.2d 400, 404–5, and fn. 5A.

Here, however, that is not what Reese and Marine are after. What they want, and what I believe that they were entitled to, is a hearing at which they can argue about, and present evidence relevant to, the question of what should be done by the United States Board of Parole on the basis of their new convictions. It would hold that they became entitled to such a hearing promptly after the detainers were lodged against them. I would require the hearing that 28 C.F.R. § 2.53(a), quoted in the majority opinion, purports to make discretionary with the parole board. For such a hearing, the annual review, provided for in subsection (c) of § 2.53, is no substitute.

A detainer can be, and usually is, detrimental to the prisoner. It is, or can be, held against him by the prison authorities and the parole authorities of the jurisdiction where he is imprisoned. It may result in loss of valuable privilege, and in having to serve his full term in prison when he would otherwise have been released. *See United States ex rel. Hahn v. Revis,* 7 Cir., 1975, 520 F.2d 632, 637; *Cooper v. Lockhart,* 8 Cir., 1973, 489 F.2d 308, 314 n. 10; R. Dawson, Sentencing: The Decision as to Type, Length and Conditions of Sentence 283 (1969); Note, *Detainers and the Correctional Process,* 16 Wash.U.L.Q. 417, 418–20 (1966). Moreover, the United States Board of Parole has discretion as to whether to revoke parole at all for a violation and also as to the terms it will impose if it does revoke parole. Not every parole violation, even one based on conviction of an offense while on parole, results in parole revocation. *Cooper v. Lockhart,* 8 Cir., 1973, 489 F.2d 308, 316; *In re Shapiro,* 1975, 14 Cal.3d 711, 122 Cal.Rptr. 768, 537 P.2d 888. If a prompt hearing is held, the detainer may be lifted. Alternatively, the board may decide to "execute" the warrant, so that the parolee can serve his reinstated time concurrently with the time that he is serving under the new conviction. If there is no decision, if the detainers are simply left in effect, these possibilities are eliminated by mere bureaucratic inertia. *See Smith v. Hooey,* 1969, 393 U.S. 374, 378, 89 S.Ct. 575, 21 L.Ed.2d 607. This is not consistent with the principles of due process laid down in *Morrissey, supra. See also Pope v. Chew, supra,* 521 F.2d at 405. It is the kind of "grievous loss" that is referred to in the *Morrissey* opinion. (408 U.S. at 481, 92 S.Ct. 2593)

It is not for us to assume, as the majority opinion does, that a hearing in these cases would be a waste of time

because we can conceive of no mitigating circumstances in these cases that would justify lifting the detainer or executing it so as to make the remaining parole term concurrent with the new term. Our discretion is not involved, nor are our notions as to what mitigating circumstances may exist. The discretion belongs to the Board of Parole; so does the decision as to whether there are mitigating circumstances and, if so, what are to be the consequences. The Board, therefore, must hold a hearing meeting the standards of *Morrissey, supra.* Under these circumstances, we have no way of knowing whether the failure to hold a hearing was "prejudicial." To decide that question, we would have to guess what the Board might have done if it had had a hearing. If due process requires a hearing, its denial is prejudicial.

My views are fully supported by the Seventh Circuit in *United States ex rel. Hahn v. Revis, supra,* by the Eighth Circuit in *Cooper v. Lockhart, supra,* and by the California Supreme Court in *In re Shapiro, supra.* The decisions cited by the majority as to the contrary, *Gaddy v. Michael,* 4 Cir., 1975, 519 F.2d 699, 674; *Cook v. United States Attorney General,* 5 Cir., 1974, 488 F.2d 667; *Burdette v. Nock,* 6 Cir., 1973, 480 F.2d 1010; and *Small v. Britton,* 10 Cir., 1974, 500 F.2d 229, seem to me, in the light of *Morrissey, supra,* to be plainly wrong. In substance, they do not require a hearing until the Board of Parole takes custody of the parolee, an event that usually occurs only when he is released from custody by the authorities with whom the detainer was lodged. To adopt such a position is to ignore the actual effect of the detainer. It is, in my view, contrary to the decision in *Morrissey.* The fact is that a detainer, when lodged, puts the detainee in the joint custody of the prison authority and of the person or body issuing the warrant which is the basis for the detainer. *Braden v. 30th Judicial Circuit Court of Kentucky,* 1973, 410 U.S. 484, 489 n. 4, 93 S.Ct. 1123, 35 L.Ed.2d 443.

In view of the time that has elapsed since the detainers in these cases were lodged (Over 2½ years in each case), I would remand with directions to issue the writ, quashing the parole violation warrants and the detainers.