[No. 2914–2.   Division Two.   May 25, 1978.]

*In the Matter of the Personal Restraint of*
LON E. MYERS, *Petitioner.*

C. F. Cordes III and Cordes, Cordes & Younglove, for petitioner.

Patrick D. Sutherland, Prosecuting Attorney, and Richard Strophy, Deputy, for respondent.

REED, J.—Petitioner Lon E. Myers, in this action, challenges the order of the trial judge revoking his probation and sentencing him to the Division of Institutions. He also urges that the imposition of two consecutive terms violates his Eighth Amendment right to be free from cruel and unusual punishment.

Because the primary issues here involve "timing" problems, we will set forth the facts in diary form.

September 11, 1972: Petitioner convicted of second–degree burglary in Thurston County. Sentencing deferred for two years.

November 9, 1972: Petitioner pleaded guilty to grand larceny charge in Thurston County. Trial court extends original deferral for 1 year and defers sentencing on this charge for 3 years.

February 27, 1974: Petitioner convicted of four counts of second–degree burglary in Grant County.

March 26, 1974: The Thurston County prosecutor filed a petition to revoke the 1972 probations; bench warrant issued, served on petitioner March 27 in Grant County, and Thurston County requests a hold or detainer.

May 28, 1974: After Grant County sheriff fails to place hold or detainer on defendant, he is sentenced to four concurrent 15–year terms and transferred to the institution at Shelton.

February 1976: Petitioner paroled from Washington State Penitentiary.

June 8, 1976: Petitioner arrested in Thurston County for violating terms of probation on the 1972 sentences; released on own recognizance.

October 28, 1976: Hearing to revoke petitioner's probation and to sentence him on the 1972 conviction held. Petitioner sentenced to two consecutive 15–year terms.

Although the question of the trial court's power to revoke probation and sentence probationer after the period for which the sentences were deferred had expired, did not surface until oral argument on appeal, we will first address that issue. The Supreme Court's recent decision in *State v. Mortrud*, 89 Wn.2d 720, 575 P.2d 227 (1978) casts some doubt on the continuing vitality of its earlier opinion in *Jaime v. Rhay*, 59 Wn.2d 58, 365 P.2d 772 (1961). In *Jaime*, the court construed RCW 9.95.240, and held that "The mere elapse of time . . . does not dissolve the order of probation or deprive the court of its continuing jurisdiction." *Jaime v. Rhay, supra* at 60.

It will be observed, however, that *Mortrud* dealt specifically with a sentence, the execution of which had been suspended, and not a "deferred sentence," as was the case in *Jaime*. The rule of *Mortrud* was very carefully couched in language at page 724, as follows:

> When the sentence has been *imposed* but under the terms of RCW 9.95.210 its execution is deferred, we hold RCW 9.95.230 operates to terminate the jurisdiction of the court over the defendant upon the expiration of the probationary period, and the court shall have no authority to revoke, modify, or change its order of deferral of execution of the sentence.

(Italics ours.)

In this respect, we also note that *Mortrud* did not purport to overrule *Jaime*, although it could be argued there is verbiage in the opinion indicating a disposition on the part of the Supreme Court to apply the rule of that case to deferred sentence probations. On the other hand, because RCW 9.95.230[1] does not distinguish between suspended

---

[1]RCW 9.95.230 reads as follows:

"The court shall have authority at any time during the course of probation to

sentence probation on the one hand and deferred sentence probation on the other, we think the failure of the Supreme Court expressly to limit the trial court's jurisdiction in the latter case is indicative of an intention to restrict their ruling in *Mortrud* to suspended sentences.

■ Such a result is eminently justified by the material differences between the two types of probation. In the suspended sentence case the criminal prosecution has run its course, ending in the pronouncement of judgment or sentence, the execution of that judgment or sentence merely being delayed. In such cases, the sentencing court's interest in the defendant logically continues only so long as it has been extended by the grant of probation.

On the other hand, where the court elects to "defer" or put off sentencing, the criminal prosecution has not ended and will not end until either the subsequent pronouncement of sentence or until the court grants an order of dismissal pursuant to RCW 9.95.240.[2] *Cf. State ex rel. Woodhouse v. Dore*, 69 Wn.2d 64, 416 P.2d 670 (1966); *State v. Shannon*, 60 Wn.2d 883, 376 P.2d 646 (1962). The period of *active* or *supervised* probation set by the trial court may be, as it was here, for a period of time less than the maximum sentence provided by law. It does not follow, however, that after the expiration of that period, the

---

(1) revoke, modify, or change its order of suspension of imposition or execution of sentence; (2) it may at any time, when the ends of justice will be subserved thereby, and when the reformation of the probationer shall warrant it, terminate the period of probation, and discharge the person so held."

[2]RCW 9.95.240 reads in part as follows:
"Every defendant who has fulfilled the conditions of his probation for the entire period thereof, or who shall have been discharged from probation prior to the termination of the period thereof, may *at any time prior to the expiration of the maximum period of punishment* for the offense for which he has been convicted be permitted in the discretion of the court to withdraw his plea of guilty and enter a plea of not guilty, or if he has been convicted after a plea of not guilty, the court may in its discretion set aside the verdict of guilty; and in either case, the court may thereupon dismiss the information or indictment against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted." (Italics ours.)

defendant is no longer on probation or subject to the jurisdiction of the court which has not yet imposed its sentence. It is apparent, from the face of its orders deferring sentence, that it was the intention of the trial court in the instant case to reserve its jurisdiction over petitioner Myers. Each order specifically provides that it "shall remain in full force and effect until further notice of the court or until the same is revoked, modified or changed, or the period of probation is terminated by an order of the court as provided by law." Clearly the trial court had discretion to continue its hold over petitioner Myers for a period not exceeding 15 years. RCW 9.95.210.[3] *Cf. State v. Farmer,* 39 Wn.2d 675, 237 P.2d 734 (1951).

We therefore hold that the term "course of probation" in RCW 9.95.230, as it applies to the case of a deferred sentence, means the period between the deferring of sentence and either the subsequent imposition of sentence or the entry of an order of dismissal at defendant's behest under RCW 9.95.240.

In his brief, petitioner challenges the trial judge's order revoking probation on two grounds. First, he argues that his inquiries to prison officials concerning his probation status constituted a formal demand for a probation revocation hearing and served to bring him within the ambit of RCW 9.98.010, which states in part:

(1) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of this state, and whenever during the continuance of the term of imprisonment there is pending in this state any *untried indictment, information or complaint* against the prisoner, he shall be brought to trial within one hundred twenty days after he shall have caused to be delivered to the prosecuting attorney and the superior court of the county in which the *indictment, information or*

---

[3] RCW 9.95.210 provides in part:

"The court in granting probation, may suspend the imposing or the execution of the sentence and may direct that such suspension may continue for such period of time, not exceeding the maximum term of sentence except as hereinafter set forth and upon such terms and conditions as it shall determine."

*complaint* is pending written notice of the place of his imprisonment and his request for a final disposition to be made of the *indictment, information or complaint: . . .* (Italics ours.)

██ Our reading of the statute convinces us that it was not designed to provide a procedure for resolving outstanding probation or parole violations. A revocation hearing is not a trial, *Morrissey v. Brewer*, 408 U.S. 471, 480, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972); *cf. State v. Riddell*, 75 Wn.2d 85, 449 P.2d 97 (1968), and therefore is not within the express scope of RCW 9.98.010(1). In addition, even assuming the availability of the RCW 9.98.010(1) procedure, petitioner failed to make formal written demands upon the Thurston County prosecutor and Superior Court. Although petitioner claims he made several inquiries to prison officials concerning his probation status, it is well settled that only those individuals who have complied with the statute and have submitted a written request for disposition of the pending action may claim the benefit of the 120–day time period. *State v. Young*, 16 Wn. App. 838, 561 P.2d 204 (1977); *State v. Rising*, 15 Wn. App. 693, 552 P.2d 1056 (1976). Petitioner's reliance on the statute is unwarranted.

██ We are more concerned with petitioner's second argument: that failure to provide him with a revocation hearing within a short time after his arrest in 1974 deprived him of due process of law. It is clear that prisoners facing revocation of probation or parole status are not stripped of all constitutional rights, and specifically are to be afforded a hearing conducted in a manner consistent with the due process clauses of the state and federal constitutions. *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973); *Morrissey v. Brewer, supra.*[4] We agree

[4]Generally, the prisoner must be afforded a prompt, on–site "probable cause" hearing as well as a more thorough revocation hearing. Before an individual's probation or parole may be revoked, he must be provided with: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross–examine adverse witnesses

with petitioner's general contention that in certain circumstances failure to provide the prisoner with a timely revocation hearing is so prejudicial as to amount to an interference with his right to due process. *Morrissey v. Brewer, supra; see generally* the annotation at 36 L. Ed. 2d 1077, § 18 (1972). In *Moody v. Daggett,* 429 U.S. 78, 50 L. Ed. 2d 236, 97 S. Ct. 274 (1976), the United States Supreme Court held that the due process clause does not require that a parolee who commits a subsequent criminal offense for which he is then incarcerated be afforded an immediate parole revocation hearing.

As stated by the Ninth Circuit Court in *Reese v. United States Board of Parole,* 530 F.2d 231, 234 (9th Cir. 1976):

> But it appears clear that *Morrissey* was written within the framework of a situation where the facts upon which the entire parole revocation proceeding is based could be contested by the alleged violator. It was that uncertainty which due process required to be promptly resolved by a probable cause hearing and a subsequent final hearing. . . . We do not find the same reasons either appropriate or compelling to the case of a parole violator who has been convicted of a subsequent crime or is confined upon his own plea of guilty in open court.

The same considerations are equally relevant to a probation revocation hearing. *Gagnon v. Scarpelli, supra.* Unlike a "technical" violation situation, here there is no real danger that vague memories or lost evidence will result in prejudice to the prisoner. Some jurisdictions have held that an unexecuted detainer placed in an inmate's institutional file itself, may cause harm by making the individual ineligible for prison honor programs, *see Cooper v. Lockhart,* 489 F.2d 308 (8th Cir. 1973); *Sutherland v. District of Columbia Bd. of Parole,* 366 F. Supp. 270 (D.D.C. 1973); *In re Shapiro,* 14 Cal. 3d 711, 537 P.2d 888, 122 Cal. Rptr. 768

---

(unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey v. Brewer,* 408 U.S. 471, 489, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972).

(1975), *but see Moody v. Daggett, supra;* however, as no detainer was placed in petitioner's file, we need not address this issue. We believe that petitioner has not met his burden of showing that failure to provide an immediate hearing caused him prejudice and, therefore, find no violation of the due process clause.

Finally, petitioner alleges that the trial judge's decision to impose two *consecutive* terms of 15 years each amounts to the imposition of cruel and unusual punishment. We find no merit in this contention. The imposition of two terms, on two serious felonies, is not so shocking as to violate principles of fundamental fairness. *State v. LaRoque,* 16 Wn. App. 808, 560 P.2d 1149 (1977). Nor is there evidence in the record to support petitioner's contention that the Grant County court unduly considered the Thurston County crimes in setting its sentence, thereby subjecting petitioner to double punishment for the Thurston County crimes.

Petitioner's personal restraint petition is denied.

PEARSON, C.J., and SOULE, J., concur.

Reconsideration denied June 27, 1978.