Cheshire
No. 85-566

# The State of New Hampshire

v.

# Jurgen Rau

March 5, 1987

*Stephen E. Merrill,* attorney general (*Barbara R. Keshen,* assistant attorney general, on the brief and orally), for the State.

*Joanne Green,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. This case is an appeal from a finding that the defendant was in violation of his probation, resulting in the imposition of a portion of a previously suspended term of incarceration. We reverse.

On November 29, 1982, the defendant, Jurgen Rau, pleaded guilty to burglary and theft by unauthorized taking in violation of RSA 635:1 and 637:3, respectively, and was sentenced on that date to serve twelve months at the Cheshire County House of Correction for burglary and two-to-four years at the New Hampshire State Prison for unauthorized taking. The defendant's sentence to the county house of correction was deferred until January 17, 1983. His sentence to the State prison was suspended, and he was placed on probation for two years. The court did not indicate whether the defend-

ant should serve his sentences concurrently or consecutively, or when his term of probation was to commence.

The defendant was released from the custody of the house of correction on August 30, 1983. On May 14, 1985, the defendant's probation officer filed a violation of probation complaint, alleging that the defendant violated the terms of his probation on July 6, 1983, August 20, 1983, and March 16, 1984, by failing to participate in an .alcohol abuse program; on February 15, 1985, by failing to be of good behavior by being arrested and convicted for driving while intoxicated and driving without a license; and on May 3, 1985, by failing to abstain from using controlled drugs.

At the violation of probation hearing on May 28, 1985, before O'Neil, J., the defendant pleaded chargeable to the probation violations and agreed to attend a long-term residential treatment program as soon as the space became available. On August 29, 1985, a hearing was held to determine the status of the defendant's participation in the program. However, at that time the defendant withdrew his request to participate in the treatment program and further argued that he had not violated his probation, as he had pleaded previously. He alleged that his sentences had run concurrently and, therefore, his probationary term had expired in November, 1984, two years after it was imposed and six months prior to the filing of the probation violation complaint. The original Sentencing Judge (*Contas*, J.) also presided over the defendant's August 29, 1985 hearing. At this hearing, the judge amended his original sentence by stating that the sentences were to run consecutively, thereby reflecting his intention at the time of the 1982 sentencing. The court then indicated that the defendant's probationary term did not commence until after his release from the house of correction on August 30, 1983, and committed the defendant to one-and-one-half to three years at the State prison for a violation of probation. The defendant's motion for reconsideration of the sentence was denied after a hearing on November 26, 1985.

On appeal, the defendant raises the same issue he raised at the August 29, 1985 violation of probation hearing. The State counters that the court had jurisdiction to revoke the defendant's probation because his sentences ran consecutively, meaning his term of probation did not commence until after his release from custody in August 1983. The State argues in the alternative that if the sentences are deemed to run concurrently, the court had jurisdiction to revoke the defendant's probation because the violations occurred during the term of probation and the petition for revocation was brought within a reasonable time after the expiration of the term.

■■ Trial judges are vested with broad discretionary powers with regard to sentencing. They may provide for terms of imprisonment, probation, conditional or unconditional discharge, or a fine. *See* RSA 651:2 (Supp. 1986). This court has held it to be fundamental that:

"At the conclusion of the sentencing proceeding, a defendant and the society which brought him to court must know in plain and certain terms what punishment has been exacted by the court as well as the extent to which the court retained discretion to impose punishment at a later date and under what conditions the sentence may be modified."

*State v. Michael B.*, 124 N.H. 590, 592–93, 474 A.2d 564, 565–66 (1984) (quoting *Stapleford v. Perrin*, 122 N.H. 1083, 1087, 453 A.2d 1304, 1306 (1982)); *see also United States v. Daugherty*, 269 U.S. 360, 363 (1926) ("[s]entences in criminal cases should reveal with fair certainty the intent of the court. . . .").

At the conclusion of the original sentencing hearing in the case at bar the court imposed the following:

"On . . . the burglary charge: The defendant is sentenced to the Cheshire County House of Correction for twelve months; stand committed. Serving of the sentence is deferred until January 3, 1983, at which time he will report to the Sheriff's Office for transportation to the House of Correction.

On [the theft charge]: The defendant is sentenced to the New Hampshire State Prison at hard labor for no more than four years nor less than two years, suspended during good behavior and provided that he participate in an alcohol abuse program under the direction and supervision of the New Hampshire Probation Department. Therefore, he is placed on probation for two years."

The order does not indicate whether the sentences are to run concurrently or consecutively and is further silent as to when the term of probation begins. This lack of clarity was evident to the presiding justice at the August 29, 1985 hearing, thus making it necessary for him to amend the original order so as to reflect his intention that the "probation didn't start until after [the defendant] was released from the house of correction."

■ RSA 651:3, III, repealed in 1975, provided in pertinent part that "any multiple sentences of imprisonment imposed on any person shall be served concurrently." Since its repeal, New Hampshire law no longer specifies whether multiple sentences imposed run

concurrently or consecutively. *See* R. MCNAMARA, 2 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE AND PROCEDURE § 878 (1980). The legislature repealed RSA 651:3, III to afford a judge, with discretion, the option to impose consecutive sentences in order to deal with that group of criminals who need the deterrent of consecutive sentences. The legislature additionally indicated that in the remainder of cases "[judges] should almost always impose sentences concurrently." N.H.S. JOUR. 306 (1975).

We are also persuaded by the reasoning in *United States v. Adair*, 681 F.2d 1150 (9th Cir. 1982), which is factually similar to the case at bar. The *Adair* court declared:

> "Where a sentencing order is silent on when the probationary term commences, there is a strong presumption that the term starts on the date sentence is imposed and runs concurrently with any period of imprisonment imposed on any remaining count or counts.[3]
>
> 3. If a sentencing court does not intend this result, then the probationary sentence should state explicitly and precisely when probation is to commence. . . ."

*United States v. Adair, supra* at 1151; *see United States v. Rodriguez*, 682 F.2d 827, 829 (9th Cir. 1982). Accordingly, we hold that when a sentencing order, encompassing multiple counts or multiple indictments, is silent as to whether the sentences imposed on each count or indictment are to run concurrently or consecutively, the presumption is that the sentences run concurrently. If, in its discretion, a sentencing court intends to impose consecutive sentences, it must specifically state that intention in its order. If the sentencing order mandates a term of probation and neglects to indicate when that term commences, it is presumed to begin on the day it is imposed. Accordingly, Mr. Rau's probationary term began on November 29, 1982, terminated two years from that date, and ran concurrently with his term of incarceration.

We find no merit to the State's contention that a term of imprisonment and a term of probation can only be meaningfully implemented if they are imposed consecutively. That the defendant is simultaneously serving a term of probation and a term of incarceration is not unique and should not be an impediment to the presumption of concurrency. *United States v. Adair, supra* at 1152; *see Burns v. United States*, 287 U.S. 216, 223 (1932). Under the facts of this case, this court cannot accept the proposition that as a matter of law probationary sentences must run consecutive to a term of incarceration.

In this case, the department of probation found no impediment to subjecting the defendant to its "supervision and guidance," pursuant to RSA 651:2, V (Supp. 1986), while the defendant was simultaneously serving his term of incarceration. During the August 29, 1985 violation of probation hearing, the department alleged that the defendant was in violation of its rules and regulations when, on August 20, 1983, he "showed up drunk for a weekend in jail" while participating in a work release program. Furthermore, the defendant was only incarcerated for approximately two and one-half months during the concurrency period. He was, therefore, subject to the control and guidance of the probation department for a period of approximately twenty-one and one-half months, two months of which were prior to his incarceration and nineteen and one-half months of which were after his release.

As in this case, a defendant may still take advantage of the probation department's opportunities for reformation if he is simultaneously serving terms of probation and incarceration. We do not find that concurrent terms will entirely frustrate the goals of probation, and they may therefore be imposed simultaneously.

We next address the attempt by the judge presiding over the August 29, 1985 violation of probation hearing to amend the sentencing order to reflect his original intention. Generally, under common law in criminal cases, judgments, decrees, and orders are within the control of the court and may be amended, modified, or vacated, provided the original punishment imposed not be augmented. *United States v. Benz*, 282 U.S. 304, 306–07 (1930). In New Hampshire, courts have the power to modify a sentence pursuant to their limited statutory power of review, such as provided by RSA 651:20 and RSA 651:23, or "because of certain factors which existed at the time of sentencing, such as misapprehensions by the trial court as to history, character, or physical or mental conditions of the defendant." *State v. Dunn*, 111 N.H. 320, 322, 282 A.2d 675, 676 (1971). We note that the defendant herein did not appear before the court for any such purpose. Rather the defendant's presence in court was pursuant to a complaint alleging that he had violated the terms of his probation.

Given the finding that the original sentences imposed by the court were to run concurrently, the defendant, at the time of the August 29, 1985 hearing, had already served his terms of incarceration and probation when the court amended its original sentence, which resulted in the enhancing of the criminal penalty. At some point the sentencing process must come to an end. *State v. Dunn*,

*supra* at 321, 282 A.2d at 677. It is far better to have the court indicate in its sentencing order the exact sentence it intends to impose than to have the fate of every convicted person, and the possibility of enhancement of every sentence, be dependent upon the recollection of the trial judge or the uncertainty of parol testimony for months and perhaps for years after the original sentence has been served. Thus we hold, under the facts of this case, that the sentencing court was not permitted to amend its original sentencing order so as to enhance the criminal penalty imposed after the defendant had completed his sentence.

The State also contends that the sentencing court had jurisdiction to revoke the defendant's probation because the violations occurred during the term of probation and the petition for revocation was brought within a reasonable time after the expiration of the probationary period. The facts of this case do not support this proposition.

■ The initial violations alleged by the State occurred on July 6, 1983, August 20, 1983, and March 16, 1984, during the defendant's term of probation. The probation department had a reasonable time to file a complaint alleging a violation of probation after the acts constituting the violation were committed and known to the department and before the end of the probationary term. The probation department did not file its petition until May 14, 1985—approximately twenty-two months after the occurrence of the first alleged violation, fourteen months after the occurrence of the last, and in any case, six months after the expiration of the defendant's probationary term. The State having failed to present its petition in a timely fashion, it is, under the above circumstances, prohibited from doing so. The present case is distinguishable from those instances in which the conduct constituting the basis for the violation occurs when the defendant is on probation but a petition is not filed before the end of the probationary period because the State could not reasonably do so.

■ The remaining violations alleged occurred on February 15, 1985, and on May 3, 1985, months after the defendant's term of probation had expired. Conduct occurring after the expiration of the term of probation is not relevant and cannot be used as a factual basis in a petition alleging a violation of probation. *See Watkins v. State*, 455 So. 2d 160, 162 (Ala. Crim. App. 1984).

The imposition of the previously suspended term of incarceration is, therefore, reversed.

*Reversed.*

All concurred.