Grafton
No. 2008-010

THE STATE OF NEW HAMPSHIRE

v.

ANGEL ALMODOVAR

Argued: January 22, 2009
Opinion Issued: April 9, 2009

*Kelly A. Ayotte*, attorney general (*Thomas E. Bocian*, assistant attorney general, on the brief and orally), for the State.

*Sheehan, Phinney, Bass & Green, P.A.*, of Manchester (*Robert H. Miller* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Angel Almodovar, appeals the decision of the Superior Court (*Vaughan*, J.) denying his motion to correct his imposed deferred sentences. We vacate and remand.

The record reveals the following facts. On January 4, 1996, the defendant pleaded guilty to three counts of felonious sexual assault. *See* RSA 632-A:3 (1985) (amended 1997, 2003, 2006). On indictment 94-S-474, the defendant was sentenced to the New Hampshire State Prison for three-and-one-half to seven years, suspended for five years. On indictments 94-S-476 and 94-S-478, the defendant was sentenced to three-and-one-half to seven years on each charge, to run concurrently, deferred for five years. The sentencing order for each deferred sentence provided: "Defendant shall file a petition to continue deferral no later than January 4th of each year." Moreover, "[t]hirty (30) days prior to the expiration of the deferred period, the defendant may petition the Court to show cause why the deferred commitment should not be imposed." On all three of the charges, the defendant was also placed on probation for a period of five years.

On June 26, 1997, the defendant was charged with a probation violation for failing to complete a sex offender treatment program. He was sentenced to one year in the house of corrections with the option of petitioning for suspension of the sentence following acceptance into a program. The defendant was accepted into a program, and on May 15, 1998, the defendant's remaining sentence was suspended.

On July 26, 1999, the defendant was found chargeable on another violation of probation and the Superior Court (*Fitzgerald*, J.) imposed the three-and-one-half to seven year suspended sentence in indictment 94-S-474. On January 4, 2001, while the defendant was still serving the imposed suspended sentence, the deferral period on 94-S-476 and 94-S-478 ended. The defendant failed to petition to suspend the two concurrent deferred sentences. On February 15, 2001, the Superior Court (*Smith*, J.) issued the following order:

> As a [] condition of the defendant's sentence, he was required to annually petition for continuation of deferral of the sentences. He has never done so nor, at the conclusion of the five-year deferral period, did he move to suspend the deferred sentences.
>
> The deferred sentences of January 4, 1996 are brought forward and imposed.

On February 20, 2004, the Superior Court (*Burling*, J.) denied the defendant's motion to correct the sentence. On December 22, 2006, the defendant, *pro se*, filed a motion to correct the illegal sentence, arguing that

the trial court erred in imposing the deferred sentences consecutively to the suspended sentence and after the period of probation had expired. On August 3, 2007, the Superior Court (*Vaughan*, J.) held a hearing on the defendant's motion to correct illegal sentences and motion for appointment of counsel, and denied both.

On appeal, the defendant argues that the trial court erred in imposing the deferred sentences: (1) consecutively; (2) after the statutory maximum period of probation had expired; and (3) without providing the defendant with counsel and a hearing.

■ Prior to addressing the defendant's arguments, we note that the defendant has completed serving the deferred sentences and has been released. At oral argument, we asked the State whether this case is moot. The State responded that the defendant's time served in jail could influence any future federal sentencing, and that the defendant has the option to file a writ of *coram nobis*. For these reasons, we conclude that this case is not moot.

Initially, we address the defendant's argument that the trial court erred in imposing the deferred sentences consecutively. The defendant argues that because the sentencing order is silent as to whether the deferred sentences were concurrent or consecutive to the suspended sentence, the three sentences must run concurrently. The defendant further argues that the negotiated plea provided no notice that these sentences could run consecutively. The defendant argues that by imposing the deferred sentences, the trial court illegally modified the original sentence, effectively making the deferred sentences consecutive to the suspended sentence. We disagree.

■ We have held that "[a]t the conclusion of the sentencing proceeding, a defendant and the society which brought him to court must known in plain and certain terms what punishment has been exacted by the court as well as the extent to which the court retained discretion to impose punishment at a later date and under what conditions the sentence may be modified." *Stapleford v. Perrin*, 122 N.H. 1083, 1087 (1982). "[W]hen a sentencing order . . . is silent as to whether the sentences imposed on each count or indictment are to run concurrently or consecutively, the presumption is that the sentences run concurrently." *State v. Rau*, 129 N.H. 126, 130 (1987).

■ Unlike suspended sentences, *see* RSA 651:20 (Supp. 2008), deferred sentences lack explicit statutory authorization. *State v. Rothe*, 142 N.H. 483, 485 (1997). Nevertheless, we have said the legislature impliedly condones deferred sentences. *Id.*; *see* RSA 159:3-a, III (2002); RSA 331-A:26, III (Supp. 2008); RSA 625:9, VIII (2007). We have further held that a deferred

sentence begins to run on the date the sentence is pronounced — not the date it is imposed — because the defendant must immediately comply with the implied condition of good behavior inherent in a deferred sentence. *State v. Clark*, 151 N.H. 56, 58 (2004).

Here, on January 4, 1996, the defendant was sentenced on all three charges. Each sentence included a three-and-one-half to seven year prison sentence. As to indictment 94-S-474, the sentence was suspended. As to indictments 94-S-476 and 94-S-478, the sentences were deferred. The sentencing orders specify that 94-S-476 and 94-S-478 run concurrently. They are silent, however, as to whether the deferred sentences are concurrent or consecutive to the suspended sentence. Because the trial court did not specify that the deferred sentences were consecutive to the suspended sentence, they are concurrent. *See Rau*, 129 N.H. at 130. Thus, all three sentences began to run on January 4, 1996. *See Clark*, 151 N.H. at 58. The trial court's decision to impose the suspended and deferred sentences at different times does not signify that the sentences are consecutive. Instead, it signifies, as we have stated, that the "rules of statutory construction counsel us to treat deferred sentences and suspended sentences as separate concepts." *Rothe*, 142 N.H. at 485.

■ The effect of imposing the deferred sentences may result in the appearance of consecutive sentences; however, the plain language of the sentencing orders puts the defendant on notice of this possibility. Specifically, the sentencing orders on the deferred sentences provide: "All of the sentence is deferred for a period of five years" and "[t]hirty (30) days prior to the expiration of the deferred period, the defendant may petition the Court to show cause why the deferred commitment should not be imposed. Failure to petition within the prescribed time will result in imposition of the deferred commitment without further hearing." Thus, based upon the plain language of the sentencing orders, the defendant had notice that after five years of probation he could be incarcerated for three-and-one-half to seven years. The trial court's decision to impose the deferred sentences consistent with the language of the sentencing order was not error.

We next address the defendant's argument that the trial court erred in imposing the deferred sentences following the period of probation. The defendant argues that his probation ended on January 4, 2001, and that it was error for the trial court to impose the deferred sentences on February 15, 2001 — forty-three days after the expiration of the deferral period.

We have not previously determined whether the trial court has authority to impose a deferred sentence following the deferral or probationary period. In addressing this issue today, we are cognizant of the difficulty in interpreting the trial court's authority in imposing deferred sentences

without clear statutory authority. A trial court's sentencing authority is statutory. *See* RSA ch. 651 (2007 & Supp. 2008). Looking to other jurisdictions, we note that courts usually apply the strict language of the statute. *See, e.g., People v. Nichols*, 140 P.3d 198, 200-01 (Colo. Ct. App. 2006) (statute limits trial court's authority to impose deferred sentence to set period); *DeShields v. State*, 132 P.3d 540, 543 (Mont. 2006) (statute provides that petition to revoke deferred sentence must be filed before end of period); *State v. Rodriquez*, 547 P.2d 974, 975 (Okla. Crim. App. 1976) (statute provides that court may accelerate deferred sentence only where application is filed during term of probation); *State v. Ciarlo*, 409 A.2d 1216, 1220 (R.I. 1980) (statute provides that the trial court's authority to impose sentence is during deferral period). As stated above, however, our legislature has not articulated the parameters of deferred sentences. *See Rothe*, 142 N.H. at 485. We thus look to those courts that have addressed imposing a sentence after expiration of the set period without clear statutory authority. These cases usually involve a violation of probation.

Courts are split as to whether a trial court retains jurisdiction to impose a sentence following the period of probation. Some jurisdictions hold that the trial court retains jurisdiction as long as the proceedings commence during the probation period. *See, e.g., Parkerson v. State*, 321 S.W.2d 207, 209 (Ark. 1959); *People v. Speight*, 389 N.E.2d 1342, 1347 (Ill. App. Ct. 1979). Other jurisdictions hold that probation may be revoked within a reasonable time of expiration. *See, e.g., State v. Miller*, 424 A.2d 1109, 1111 (Md. 1981); *Commonwealth v. Sawicki*, 339 N.E.2d 740, 742 (Mass. 1975). By any account, a majority of jurisdictions disagree with the defendant's position that the probationary period creates a strict limitation on the trial court's authority. Even those courts that once held that the trial court retains no authority to revoke after the probationary period have since made exceptions where the revocation proceedings begin during the probationary period. *See People v. Johnson*, 637 N.E.2d 700, 701 (Ill. App. Ct. 1994); *State v. Henderson*, 632 S.E.2d 818, 821 (N.C. Ct. App. 2006); *Vincent v. Warden of Dillwyn Corr. Center*, 517 S.E.2d 17, 18-19 (Va. 1999).

In *Rau*, we addressed whether the sentencing court had jurisdiction to revoke the defendant's probation after the period of probation ended. *Rau*, 129 N.H. at 132. In that case, the alleged violations occurred during the probationary period; however, the State failed to petition until several months after the alleged incidents and six months after the expiration of the defendant's probation. *Id.* Based upon those facts, we held that the State failed to present the petition "in a timely fashion." *Id.* We noted: "The present case is distinguishable from those instances in which the conduct constituting the basis for the violation occurs when the defendant is on probation but a petition is not filed before the end of the probationary

period because the State could not reasonably do so." *Id.* We thus left open the issue of whether a petition for violation of probation may be filed following the probationary period.

█ Considering our analysis in *Rau* and the absence of strict statutory limitations, we hold that the trial court retains authority to impose the sentence in "a timely fashion," *Rau*, 129 N.H. at 132, following the expiration of the deferral or probationary period. This is consistent with the purpose of deferred sentences, which allow the trial court to retain jurisdiction over the defendant. *See Matter of Myers*, 579 P.2d 1006, 1009 (Wash. Ct. App. 1978). "[W]here the court elects to 'defer' or put off sentencing, the criminal prosecution has not ended and will not end until either the subsequent pronouncement of sentence or until the court grants an order of dismissal . . . ." *Id.* Because the defendant does not argue that the imposition of his deferred sentences was not completed in a timely fashion, we do not address that issue.

Finally, we address whether the defendant was entitled to a hearing and counsel prior to the trial court imposing the deferred sentences. The defendant argues that the State brought forward the deferred sentences causing the defendant to serve an increased period of incarceration in violation of his right to due process and right to counsel. As the State points out, the defendant raises these issues for the first time on appeal. Our review is therefore limited to plain error. *See* SUP. CT. R. 16-A.

█ The plain error rule allows us to consider errors not brought to the attention of the trial court. *State v. Sideris*, 157 N.H. 258, 264 (2008). However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *Id.* For us to find error under the rule: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. *Id.*

We first address the defendant's due process right to a hearing. The State argues that the trial court's decision was not error because the sentencing order explicitly states: "Failure to petition within the prescribed time will result in imposition of the deferred commitment without further hearing." Thus, the State argues, the trial court was carrying out the original sentence, as opposed to implementing a new sentence.

"Under the fourteenth amendment to the Federal Constitution, procedural due process applies to situations in which an individual faces a potential deprivation of a liberty or property interest." *State v. Gibbons*, 135 N.H. 320, 321 (1992). As to criminal defendants, we have held "that when the court retains the power to impose incarceration at a later time, the

defendant has been afforded liberty, albeit conditional, which may not be revoked without due process." *Stapleford*, 122 N.H. at 1088. "It is quite another matter, however, to hold that an *incarcerated* defendant has an equal liberty interest in *gaining* his freedom." *Gibbons*, 135 N.H. at 321.

In *Stapleford*, we listed the following situations in which a significant liberty interest exists, worthy of due process protection: (1) parole violations; (2) violations of probation; (3) when a case marked continued for sentencing is brought forward; (4) when a suspended sentence is to be revoked; (5) when some condition set by the court has not been met and incarceration is the proposed remedy; and (6) whenever the defendant requests that a suspended sentence be continued and the State contests the request. *Stapleford*, 122 N.H. at 1088. In *Gibbons*, however, we stated that an already incarcerated defendant seeking to have his sentence suspended is not entitled to the same protections. *Gibbons*, 135 N.H. at 321. Here, the defendant was incarcerated at the time the trial court imposed the deferred sentences, but *Gibbons* does not apply because the defendant was serving a separate sentence and not the newly-imposed deferred sentences. The trial court here imposed the deferred sentences because the defendant failed to petition for continuation of deferral or petition to suspend the sentence. The trial court stated that this was a condition of his sentence. We therefore find that the liberty interest involved in imposing a deferred sentence falls squarely within the fifth situation listed in *Stapleford*.

■ A deferred sentence allows a trial court to retain jurisdiction to impose incarceration at a later time, and provides the defendant with conditional liberty. As a result, the defendant "can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life," and "may be living a relatively normal life" facing "lengthy incarceration" at the time the deferral period expires. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). A hearing is structured to assure that the defendant's incarceration is not simply a result of his inadvertent failure to file the correct petition, but that it furthers the goals of sentencing. The liberty interest involved is valuable and its termination "calls for some orderly process, however informal." *Id.* The trial court's decision to impose the deferred sentences without a hearing was error. Because the liberty interest involved is specifically articulated in *Stapleford*, we hold that this error is plain. *See State v. Lopez*, 156 N.H. 416, 424 (2007) (error is plain when it is clear under current law). Moreover, because the trial court completely deprived the defendant of his right to due process, we conclude that the third and fourth criteria of the plain error

test have been met. *Cf. Fuentes v. Shevin*, 407 U.S. 67, 81 (1972) (holding procedural due process requires notice and a hearing "at a time when the deprivation can still be prevented").

 We reach the same conclusion when addressing the defendant's right to counsel pursuant to Part I, Article 15 of the New Hampshire Constitution. Article 15 reads: "Every person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel at the expense of the state if need is shown." "A defendant's right to assistance of counsel attaches by virtue of the commencement of formal criminal proceedings, and once the right has attached, a defendant is entitled to the assistance of counsel at 'critical stages' of criminal proceedings." *State v. Parker*, 155 N.H. 89, 91 (2007) (quotation and citation omitted). In *Parker*, the parties agreed that a hearing on a deferred sentence constitutes a critical stage of the proceeding. *Id.* Similarly, the State here agrees that if the defendant had filed a petition to suspend a deferred sentence, counsel must be appointed at the ensuing hearing. The State's position is dictated by both *Parker* and *Stapleford*. Because we hold that a defendant is entitled to a hearing prior to the trial court imposing a deferred sentence, the defendant is also entitled to counsel. The trial court's failure to appoint counsel was plain error.

We therefore vacate the trial court's February 15, 2001 order imposing the deferred sentences.

*Vacated and remanded.*

BRODERICK, C.J., and DALIANIS and HICKS, JJ., concurred.