Richard S. POPE, Appellant,

v.

Charles P. CHEW, Chairman, Virginia Parole & Probation Board or his successor, members of the Parole & Probation Board, Appellees.

No. 74–2095.

United States Court of Appeals, Fourth Circuit.

Argued June 10, 1975.

Decided Aug. 4, 1975.

---

Mitchell M. Willoughby [third-year law student] and Randall M. Chastain, Columbia, S.C. [court-appointed counsel] for appellant.

Linwood T. Wells, Jr., Asst. Atty. Gen., and (Andrew P. Miller, Atty. Gen., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

Richard S. Pope brought a *pro se* complaint under § 1983, styled a "Petition for Declaratory Judgment," seeking damages from the Chairman and members of the Virginia Parole and Probation Board. Pope claimed that defendants denied him due process of law by recommending to the Governor that his pardon be revoked without having first afforded him a hearing. Pope appeals the district judge's grant of summary judgment for defendants. We reverse.

## I.

Pope was convicted of murder in the Hustings Court of Portsmouth in 1936 and sentenced to die. In 1937 Governor Peery commuted his sentence to life imprisonment. On January 11, 1962, he was released on a pardon granted by Governor Almond,[1] the operative language of which was as follows:

Therefore, I, J. Lindsey Almond, Jr., Governor of the Commonwealth of Virginia, have by virtue of authority vested in me, pardoned, and do hereby pardon the said RICHARD POPE and do order that he be forthwith discharged from imprisonment, but upon the terms and conditions following, namely:

That he will conduct himself in the future as a good, law-abiding citizen;

That he be placed under the supervision of the Virginia Parole Board, subject to the rules, regulations, and conditions of parole as set forth in a parole agreement, a signed copy of which is expressly incorporated into this pardon and made a part hereof;

and The effective date of this pardon shall be January 11, 1962.

And if he should violate any of such conditions or if ever again he be found guilty of a violation of the penal laws of the Commonwealth this pardon shall be null and void.

The parole agreement incorporated by reference into the pardon, and signed by Pope, contained the following statements:

YOU WILL REMAIN UNDER SUPERVISION UNTIL YOU RECEIVE THE FINAL ORDER OF DISCHARGE FROM THE PAROLE BOARD. Your minimum release date from supervision is January 11, 1967.

(original capitalization.)

The Parole Board released Pope from supervision on January 11, 1967. The short letter to Pope informing him of this action included the following:

In taking this action, the Probation and Parole Board is not relieving you of responsibility under any of the other terms of your pardon. This is only a release from supervision.

On July 23, 1973, the Parole Board wrote Governor Holton recommending that Pope's pardon be revoked. Except for a brief introductory paragraph the letter read *in toto* as set out in the margin.[2]

---

1. The pardon recited that it was being granted "in view of his long period of incarceration, and the Judge and Commonwealth's Attorney not objecting."

2. On January 11, 1962, Governor Almond approved a conditional pardon for Mr. Pope. The Governor set one of the conditions as follows: "Should he (Pope) ever again be found guilty of the violation of any of the penal laws of the Commonwealth, or should he violate any of the conditions of parole, then this pardon shall become null and void, and he shall be required to serve the remainder and unserved portion of his sentence."

The Probation and Parole Board kept the subject under supervision for five years. He had a number of conflicts with his parole officers. In March, 1963, he was charged with hit and run, reckless driving, false information to police, and no operator's permit. The parole officer supervisor recommended that he be returned to prison; however, when the above charges were dismissed, it was decided to retain subject under supervision but to transfer him to the Suffolk area.

A few months later he was in jail again for driving without permission, and going to Norfolk, but his supervisor decided to give him one more chance. In January, 1967, he was

On August 2, 1973, Governor Holton responded to the Board's letter:

I have thoroughly reviewed your report and have concluded that Mr. Pope has been afforded every possible consideration by the State. However, it appears that he has not taken advantage of these opportunities. I am, therefore, directing his conditional pardon granted by Governor Lindsay Almond on January 11, 1962 be revoked immediately.

Pope was accorded no notice or opportunity to be heard either before the Parole Board's recommendation or before Governor Holton's revocation of his pardon.

## II.

Pope argues that the pardon and the parole agreement incorporated into it are ambiguous as to whether he was to remain subject to the conditions of the pardon after his release from Parole Board supervison on January 11, 1967. His position is that the pardon's stated condition that he be placed under Parole Board supervision and subject to the "rules, regulations, and conditions" of the parole agreement, coupled with the parole agreement's capital-letter statement that "You will remain under super-

vision until you receive *the final order of discharge* from the parole board [emphasis added]," support a reasonable inference that the Parole Board's release in 1967 constituted a total release from the conditions of the pardon. Pope gets around the clear and contrary language of the Parole Board's 1967 letter to him by noting the absence of evidence in the record that he ever received the letter. Thus, he argues, because of the alleged ambiguity in the documents it is possible that the pardon had become unconditional after 1967; if so, his due process rights were violated by its revocation. He contends that trial is necessary to resolve the alleged ambiguity, and that we must therefore reverse the grant of summary judgment.

The district court did not address this contention in its opinion. Pope's *pro se* pleadings below did not, to say the least, spell it out so well as his appointed counsel has done on appeal, but a liberal reading finds that it was presented to the district court[3] and that we can therefore consider it.

■ We find this contention without merit. First, Pope's reliance upon lack of proof that he received the Parole Board's 1967 letter overlooks that he

---

discharged from parole as the parole officer felt supervision had done all it could for him. On May 14, 1973, Mr. Pope was received back in the Penitentiary with a three-year sentence for possession of a controlled drug. The post sentence report contains this note:

"On April 12, 1973, after numerous arrests for drug dealing, he was sentenced to prison for ten years by the Corporation Court in Norfolk. All but three years of the sentence was suspended.

"*DETAILS OF OFFENSES* (AND RELATED INFORMATION): According to information elicited from Lt. Hurst of the Narcotics Squad of the Norfolk Police Department on April 16, 1973, Pope was a big local drug dealer who persisted in his drug dealing even after several arrests and 'continuations' of his cases before the Court. Undercover agents made numerous purchases from him (heroin), and a number of highly regarded informers named him as a big dealer. For self serving reasons, Pope was of some marginal value as an informer.

"On February 2, 1973 the Norfolk Police Department received a tip that Pope would

receive a large quantity of drugs from a drug dealer out of New York. He was arrested at approximately 8:45 p. m. on that same date in the Golden Triangle Motor Hotel in Norfolk. Twenty-five glassine envelopes and twenty-five red capsules were taken from his person. The contents tested positive for heroin and cocaine. A set of 'works' was found in his shirt pocket. (He was tried and convicted in Corporation Court on April 12, 1973.)"

In view of the above information, this Board must recommend that subject's pardon be revoked.

**3.** Pope included among the five paragraphs in the section of his complaint labeled "Contentions" the following sentence: "Plaintiff contends that once the conditional pardon and the conditions of the Parole Board were met on January 11, 1967, he was forever released from servitude of the sentence."

never claimed not to have received it, and that he apparently relies upon that very notification to claim that he thought his pardon was thereafter unconditional. Even assuming he never saw the letter, there is simply no ambiguity in the original documents. In addition to imposing the conditions that he "conduct himself in the future as a good, law-abiding citizen" and that he be subject to Parole Board supervision and regulations, the pardon clearly stated that it would become "null and void" if Pope was "ever again" convicted of a state crime. The Parole Board had no power, by the terms of the pardon itself, to do any more than release him from supervision. The condition of good conduct[4] and the potential for nullity upon a criminal conviction were continuing characteristics of the pardon subject to modification only by the Governor.

### III.

■ The Supreme Court has held that procedural due process must be afforded in parole revocations, *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and in probation revocations, *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *Cf. also Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Pope asks us to hold that it must also be afforded in pardon revocations. The Commonwealth has not suggested, and we have been unable to imagine, how the liberty interests of one who is free on conditional pardon differ from one who is free on parole or probation. *See Morrissey, supra,* 408 U.S. at 482, 92 S.Ct. 2593; *Gagnon, supra,* 411 U.S. at

782 & nn. 3, 4, 93 S.Ct. 1756. Surely no one would argue that an executive could revoke any pardon whimsically. The due process clause applies to revocations of conditional pardons.

The Commonwealth, however, argues that no hearing is required in this particular case. The Court in *Morrissey,* after holding that a hearing must be afforded in parole revocations, stated that "obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." 408 U.S. at 490, 92 S.Ct. at 2605. The Commonwealth points out that the pardon stated on its face that "this pardon *shall* be null and void" (emphasis added) upon Pope's conviction of another crime, and that the Parole Board's letter to Governor Holton stated that Pope had recently been convicted and sentenced for drug dealing. Thus, according to the Commonwealth, the pardon was by its own terms nullified by the conviction, and since *Morrissey* contemplates no relitigation of a conviction there was nothing to hold a hearing about.

■ This argument fails on two counts. Its first fallacy is its jump from the quoted language of *Morrissey* to the assumption that a bald allegation of a conviction, like that in the Parole Board letter, will support a revocation. Fairly read, the passage from *Morrissey* says no more than that *proof* of a conviction introduced *at a revocation hearing,* precludes any attempt to prove that the crime was not committed.[5] The record contains no indication that Governor

---

4. A condition that one "conduct himself in the future as a good, law-abiding citizen" may be subject to an attack for vagueness, but this case does not present that issue since the pardon was also quite explicit on the effect of a subsequent criminal conviction.

5. The passage relied upon by the Commonwealth appeared in *Morrissey* in this context:

    We have no thought to create an inflexible structure for parole revocation procedures. The few basic requirements set out above,

which are applicable to future revocations of parole, should not impose a great burden on any State's parole system. Control over the required proceedings by the hearing officers can assure that delaying tactics and other abuses sometimes present in the traditional adversary trial situation do not occur. Obviously a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime.

408 U.S. at 490, 92 S.Ct. at 2604.

Holton was furnished official records to verify the accusation of the Parole Board. That all indications in the record confirm the fact of Pope's conviction is irrelevant, for it is the basis on which the Governor acted that counts.[5A]

The Commonwealth's argument also ignores that revocation of the pardon was in fact treated as a matter of discretion—despite the automatic language contained in the pardon document. The Parole Board's letter set out, in addition to Pope's 1973 criminal conviction, at least two instances in which he violated Parole Board conditions while under its supervision.[6] Although violations of those conditions were by the terms of the pardon also violations of a condition of the pardon, and although the pardon stated that it "shall be null and void" upon violation of a condition, it is undeniable that Pope's pardon was not revoked in those two instances. Moreover, the Parole Board's recounting of Pope's entire post-pardon history—including the numerous alleged arrests, *without convictions,* contained in the post-sentence report—coupled with Governor Holton's statements that he had "thoroughly reviewed" the Board's report and that Pope had "been afforded every possible consideration by the State," support an inference that Governor Holton did not automatically revoke on Pope's drug conviction, but instead exercised discretion. Because it is clear that the Governor had and exercised discretion, *Morrissey* af-

fords Pope the right to present at a hearing mitigating factors, if any, that might influence the Governor not to revoke his pardon. He is entitled to speak—to plead for further tolerance. 408 U.S. at 488, 92 S.Ct. 2593.

■ We hold, therefore, that the fourteenth amendment required a hearing, conforming to the requirements set out in *Morrissey* and *Gagnon,* 411 U.S. at 783–91, 93 S.Ct. 1756, before Pope's conditional pardon could be revoked. We do not mean that the Governor must himself conduct hearings. It will suffice that the hearing be before the Parole Board prior to its recommendation to the Governor. A transcript of the hearing should accompany any recommendation of revocation, and the pardonee or his counsel should be allowed to submit a written rebuttal to the recommendation.

### IV.

■ Pope cannot recover damages. Parole Board members have been held to perform a quasi-judicial function in considering applications for parole and thus to be immune from damages in § 1983 actions. *Cruz v. Skelton,* 502 F.2d 1101 (5th Cir. 1974); *Silver v. Dickson,* 403 F.2d 642 (9th Cir. 1968), *cert. denied,* 394 U.S. 990, 89 S.Ct. 1477, 22 L.Ed.2d 765 (1969); *Joyce v. Gilligan,* 383 F.Supp. 1028 (N.D.Ohio 1974); *see McCray v. Maryland,* 456 F.2d 1, 3 (4th Cir. 1972).[7] We believe they also perform a quasi-ju-

---

**5A.** We do not mean that in a due process hearing before the Parole Board the state must comply with stringent rules of evidence such as the "best evidence" rule. Indeed, the question of conviction will not likely be an issue. If it is, certainly the state may sustain its burden short of producing a certified copy of the judgment. A letter from the Clerk of Court might well suffice. *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593.

**6.** The letter stated that Pope "had a number of conflicts with his parole officers," that he was charged with several traffic offenses in March of 1963, and that shortly thereafter "he was in jail again for driving without permission and going to Norfolk." Even leaving aside the unspecified "conflicts with his parole officers" and the subsequently dismissed traffic charges, the allegations of driving without permission and going to Norfolk (when he was

residing in Suffolk) amount to allegations that Pope violated two quite clear conditions in the parole agreement signed at the time of his pardon:

(f) Do not leave or remain away from the community where you reside without permission of your Parole Officer.

(h) You shall not own or operate a motor vehicle until you have received the written permission of your Parole Officer. . . .

**7.** This court's decision in *Bradford v. Weinstein,* 519 F.2d 728 (4th Cir. 1974), *cert. granted,* 421 U.S. 998, 95 S.Ct. 2394, 44 L.Ed.2d 664 (1975), did not consider the immunity discussed in the text, since the plaintiffs in that case did not request damages. *See* slip opinion at 735–736 (Bryan, S. C. J., dissenting).

dicial function in making recommendations to the Governor regarding the granting or revocation of pardons. *Cf. Burkes v. Callion,* 433 F.2d 318, 319 (9th Cir. 1970) (immunity of probation officers in submitting probation reports).

Fairly read, however, Pope's complaint also sought a declaratory judgment that the revocation violated due process,[8] and on appeal he has specifically requested that we direct such relief. On remand the district court will dismiss the complaint insofar as it asks damages, and enter a declaratory judgment in accordance with this opinion.

*Reversed and remanded.*

---

**8.** Although Pope's complaint requested only damages, it was styled "Petition for Declaratory Judgment." Moreover, a federal court has inherent power to grant appropriate relief, and a declaratory judgment is always appropriate as a predicate to an award of damages. *See Wolff v. McDonnell,* 418 U.S. 539, 554–55, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The unavailability of damages due to immunity does not, in our view, affect the availability of the declaratory judgment.

Pope has not requested that a federal court set him free; he is pursuing that remedy in the state courts. The Commonwealth concedes that his suit for damages was properly brought under § 1983. *See Wolff, supra,* at 554–55, 94 S.Ct. 2963; *Preiser v. Rodriguez,* 411 U.S. 475, 494, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).