193 P.3d 103 (2008)
In the Matter of the Personal Restraint Petition of Jayson Loren Edward BUSH, Petitioner.
No. 79834-6.
Supreme Court of Washington, En Banc.
Argued November 6, 2007.
Decided October 2, 2008.
*105 Marla Leza Polin, Attorney at Law, Timothy David Trageser, Trageser Law Office PS, Spokane, WA, for Petitioner.
Mary Catherine McLachlan, Attorney Generals Office WA, Spokane, WA, Amanda Marie Migchelbrink, Maureen A. Hart, Attorney General's Office, Olympia, WA, for Respondent.
OWENS, J.
¶ 1 In 2004, petitioner Jayson Bush received a conditional commutation of a lengthy sentence for first degree assault. In 2006, after Bush was arrested for assault of a child, Governor Christine Gregoire revoked his commutation. Bush filed a personal restraint petition (PRP) in this court, and the court retained the petition for consideration on the merits.
¶ 2 This case requires us to consider the governor's commutation powers in light of federal and state due process mandates. We are mindful that the constitution and laws of this state provide the governor with a great degree of discretion over whether to commute a prisoner's sentence. At issue here is whether due process protections attach to Bush's interest in his commutation once he has received it and, if so, whether his procedural and substantive due process rights were adequately safeguarded.
¶ 3 We hold that due process protections attach to the revocation of a conditional commutation and that because Bush received no opportunity to be heard, his procedural due process rights were violated. However, we further hold that Bush has not made any showing that the lack of due process prejudiced him. We also hold that the governor's revocation of the commutation did not violate Bush's substantive due process rights. Accordingly, we dismiss Bush's PRP.

FACTS
¶ 4 In 1997, Bush was convicted of three counts of first degree assault and received three consecutive 93-month sentences. Then-Governor Gary F. Locke granted him a conditional commutation on May 25, 2004. The commutation required Bush to serve a term of community custody not to exceed 24 months and provided that if he committed "any offense classified as a felony or a gross misdemeanor in the State of Washington," the commutation would be revoked. PRP Ex. D at 2.
¶ 5 In April 2006, Bush was charged with third degree assault of a child, a felony. The police reports from the incident indicated that he had struck his girlfriend's 10-year-old son repeatedly with a wooden hockey stick and a leather belt, causing severe bruising.
¶ 6 On April 17, 2006, Bush's community corrections officer (CCO) sent Governor Gregoire a letter notifying her of Bush's arrest, to which he attached police reports, photos of the victim, and a probable cause statement. *106 On May 4, 2006, Governor Gregoire sent Bush a letter stating that she had reviewed the materials attached to the CCO's letter and that she was revoking his commutation effective May 30, 2006, unless his charges were dismissed by that date.
¶ 7 Bush entered into a stipulation to police reports and order of continuance (SOC) on January 31, 2007. PRP Ex. A. Under the SOC, Bush is charged with two counts of fourth degree assault domestic violence, a gross misdemeanor, RCW 9A.36.041(2). The charges will be dismissed on "June 31[sic], 2009" if Bush complies with the conditions of the SOC. PRP Ex. A at 5. Because the charges were not dismissed by the governor's deadline, she revoked the commutation on May 30, 2006. The governor has not yet entered a formal order of revocation.
¶ 8 The briefings indicate that Bush requested but was denied an opportunity for a hearing (oral or written) before the governor revoked his commutation. On February 26, 2007, Bush filed a PRP in this court, alleging that the governor's revocation of his conditional commutation violated procedural and substantive due process. This court issued an order retaining the PRP for consideration on the merits.

ANALYSIS
¶ 9 The State may not deprive a person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3.
¶ 10 Due Process Attaches to Conditional Commutations. For due process protections to attach, Bush must have a liberty interest in avoiding revocation of his conditional commutation. "`A liberty interest may arise from the Constitution,' from `guarantees implicit in the word "liberty,"' or `from an expectation or interest created by state laws or policies.'" In re Pers. Restraint of McCarthy, 161 Wash.2d 234, 240, 164 P.3d 1283 (2007) (quoting Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)).
¶ 11 Bush's valid conviction extinguished the liberty interest he derived directly from the Constitution. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Thus, if he has a remaining liberty interest, it must arise from state law or policy. See McCarthy, 161 Wash.2d at 240, 164 P.3d 1283 (quoting Wilkinson, 545 U.S. at 221, 125 S.Ct. 2384). "For a state law to create a liberty interest, it must contain `substantive predicates' to the exercise of discretion and `specific directives to the decisionmaker that if the [law's or policy's] substantive predicates are present, a particular outcome must follow'." In re Pers. Restraint of Cashaw, 123 Wash.2d 138, 144, 866 P.2d 8 (1994) (quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)).
¶ 12 It is clear that the governor has ample discretion in the initial decision to commute a prisoner's sentence. The Washington Constitution vests the pardoning power in the governor subject to "such regulations and restrictions as may be prescribed by law." WASH. CONST. art. III, § 9. RCW 9.94A.728(5) provides that "[t]he governor, upon recommendation from the clemency and pardons board, may grant an extraordinary release for reasons of serious health problems, senility, advanced age, extraordinary meritorious acts, or other extraordinary circumstances." RCW 10.01.120 further gives the governor power to "commute a sentence or grant a pardon, upon such conditions, and with such restrictions, and under such limitations as [she] may think proper." Neither the constitution nor the statutes limit the governor's discretion to grant, deny, or place conditions on commutations.
¶ 13 However, the governor's unfettered discretion ends with the conditions of a conditional commutation itself. The commutation in this case provides that "in the event Mr. Bush commits any offense classified as a felony or gross misdemeanor in the State of Washington, this Conditional Commutation is revoked." PRP Ex. D at 2. The commutation does not contain any other conditions that lead to revocation if violated.[1] The *107 terms of Bush's agreement with the governor dictated, and Bush legitimately expected that he would retain the commutation unless he violated the condition. The governor could not revoke the commutation without finding that Bush had violated the condition. This is precisely the kind of "substantive predicate" to a "particular outcome" required for a cognizable liberty interest to arise. See Cashaw, 123 Wash.2d at 144, 866 P.2d 8.
¶ 14 The United States Supreme Court's decisions in the parole and probation contexts demonstrate that due process attaches to the revocation of conditional commutations. The Court has held that a prisoner has no protected liberty interest in receiving a discretionary commutation or pardon. Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 465, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981). Likewise, where parole decisions are wholly discretionary, there is no liberty interest in receiving parole. Greenholtz, 442 U.S. at 10-11, 99 S.Ct. 2100. However, the Court has recognized a liberty interest in avoiding revocation of both parole and probation. Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Gagnon v. Scarpelli, 411 U.S. 778, 781-82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).
¶ 15 Morrissey made it clear that the conditions placed on the particular parolee and the implicit promise those conditions confer, not the initial entitlement to parole, create the liberty interest. 408 U.S. at 482, 92 S.Ct. 2593. The Morrissey Court explained that the liberty interest in avoiding revocation of parole arises from the parolee's justifiable reliance on the conditions of parole:
The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. . . . Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.
Id.
¶ 16 This reasoning applies equally to conditional commutations. See Pope v. Chew, 521 F.2d 400, 404 (4th Cir.1975). Commutees are also free to live normal lives. They may seek work, they may have families, and they may go about their daily business with the knowledge that if they do not violate the conditions of their commutations, the state will not return them to prison. See id. This liberty interest is indistinguishable from the interest in parole and probation. We hold that Bush has a liberty interest in avoiding revocation of his conditional commutation, and thus due process attaches.[2]
¶ 17 Procedural Due Process. The due process clause guarantees that the State will not deprive Bush of a protected liberty interest without appropriate procedural safeguards. At a bare minimum, procedural due process "requires notice and an opportunity to be heard." Soundgarden v. Eikenberry, 123 Wash.2d 750, 768, 871 P.2d 1050 (1994). Bush claims, and the State does not dispute, that he received no opportunity to be heard. *108 His procedural due process rights were violated.
¶ 18 Though we need not decide in this case exactly what process is required, United States Supreme Court jurisprudence indicates that the contours of required procedural due process for commutation revocation are defined in Morrissey. In Morrissey, the Court outlined the basic procedures required to satisfy due process in parole revocation. 408 U.S. at 484-90, 92 S.Ct. 2593. To determine what process is due in a particular circumstance, the court must consider (1) the individual's interest, (2) the value of specific procedural safeguards in protecting against erroneous deprivation of that interest, and (3) the State's interest, including fiscal and administrative burdens of specific procedures. Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
¶ 19 With regard to the factors in the Mathews due process test, conditional commutation revocation is substantially similar to the parole revocation examined in Morrissey. A commutee, like a parolee facing revocation, has a limited liberty interest in avoiding revocation of his commutation. As with parole revocations, the decision to revoke a commutation "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [conditions]." Morrissey, 408 U.S. at 480, 92 S.Ct. 2593. The decision to revoke a commutation is not a criminal proceeding, and thus commutees are not entitled to all of the protections afforded to criminal defendants. Id. Nevertheless, because commutees have gained their conditional liberty and have resumed their normal lives outside the prison walls, their liberty interests are significant. See McCarthy, 161 Wash.2d at 243, 164 P.3d 1283 (citing Morrissey, 408 U.S. at 480-82, 92 S.Ct. 2593). In Pope, the only case to examine clemency revocation post-Morrissey, the Fourth Circuit held that the Morrissey safeguards were necessary to satisfy due process in a conditional pardon revocation. 521 F.2d at 405. The Morrissey parole revocation due process standard is appropriate in the commutation-revocation context.
¶ 20 In order for this court to afford relief to a personal restraint petitioner who has shown a constitutional error, the petitioner must make a prima facie showing that the error actually and substantially prejudiced him or her.[3]In re Pers. Restraint of Reismiller, 101 Wash.2d 291, 297-98, 678 P.2d 323 (1984). Bush has made no such showing. He submitted to this court a copy of the SOC into which he entered on January 31, 2007. In the SOC, he stipulated to the accuracy and admissibility of the police reports about his alleged assault against his girlfriend's son. The police reports contain evidence that is more than sufficient for a finder of fact to conclude that Bush committed a gross misdemeanor-fourth degree assault. Furthermore, in his PRP, Bush makes no allegation that he has any affirmative defense to the charge of such a gross misdemeanor. This court has no indication that a hearing in compliance with due process mandates would have changed the conclusion that Bush committed a gross misdemeanor. Because Bush has not made a prima facie showing that he was actually and substantially prejudiced by the lack of due process, we must dismiss his procedural due process claim under the Reismiller rule. See id.
¶ 21 Substantive Due Process. Bush also raises a substantive due process claim. The substantive component of the due process clause protects against certain government actions "regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).
¶ 22 In the context of executive action, the United States Supreme Court has emphasized that "only the most egregious official conduct can be said to be `arbitrary in the constitutional sense.'" County of Sacramento v. Lewis, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting Collins *109 v. City of Harker Heights, 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). Only executive action that "shocks the conscience" is cognizable under the due process clause. Id. at 846-47, 118 S.Ct. 1708.
¶ 23 We need not examine the contours of the "shocks the conscience" standard here because it is evident that the governor's actions were not shockingly arbitrary in any sense. Governor Gregoire reviewed pictures of Bush's alleged victim and police reports about the incident, and she concluded that Bush's commutation should no longer be effective. Irrespective of any procedural defects in her decision-making process, there is every indication that she acted logically, in good faith, and pursuant to evidence that she believed to be reliable. The governor's actions did not violate Bush's substantive due process rights.

CONCLUSION
¶ 24 We hold that Bush has a liberty interest in avoiding revocation of his conditional commutation that is cognizable under the due process clause and that his due process rights were violated here. However, we hold that he has not made a prima facie showing that the lack of due process prejudiced him. Finally, we hold that the governor's revocation of the commutation did not violate Bush's substantive due process rights. We dismiss Bush's PRP.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN, JAMES M. JOHNSON, Justices and BOBBE J. BRIDGE, J. Pro Tem.
CHAMBERS, J. (dissenting).
¶ 25 Due process requires that, at a minimum, anyone deprived of a liberty interest must be provided with notice and an opportunity to be heard. Soundgarden v. Eikenberry, 123 Wash.2d 750, 768, 871 P.2d 1050 (1994). The majority correctly finds that due process rights attach to the revocation of Jayson Bush's commutation but then holds that failure to provide process was not prejudicial. Majority at 105. I cannot agree. Bush was not deprived of some process. Bush received no meaningful process at all. Separation of powers demands that the governor be given great discretion on how to provide meaningful notice and an opportunity to be heard. However, I would hold that a complete failure to provide the petitioner with even a bare minimum of constitutionally required procedural due process is per se prejudicial. Under these circumstances, the petitioner should be relieved of his general burden to make a prima facie showing of prejudice.
¶ 26 The majority rests its holding on In re Personal Restraint of Reismiller, 101 Wash.2d 291, 297, 678 P.2d 323 (1984) (citing In re Pers. Restraint of Hagler, 97 Wash.2d 818, 825-26, 650 P.2d 1103 (1982)), where we said that on collateral review a petitioner is required to show that an error of constitutional magnitude is prejudicial. This shifts the burden from the State, who on direct appeal is required to "establish beyond a reasonable doubt that any error of constitutional dimensions is harmless." Hagler, 97 Wash.2d at 825, 650 P.2d 1103 (citing Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). However, where a petitioner has not had a prior opportunity for judicial review we do not apply the heightened threshold requirements generally necessary on collateral review. In re Pers. Restraint of Isadore, 151 Wash.2d 294, 299, 88 P.3d 390 (2004). In those instances, the petitioner need only show that he is unlawfully restrained under RAP 16.4. Id. This personal restraint petition is Bush's only opportunity to have a court review the governor's decision to revoke his commutation and a heightened standard is not appropriate.
¶ 27 Even if Bush had had a prior opportunity for judicial review, he still should not have been required to meet the heightened collateral review standard. Similar to our harmless error analysis, requiring a petitioner to make a prima facie showing of prejudice allows a reviewing court to uphold a decision despite the occurrence of a constitutional error during the process. It is applied based on practical considerations, ensuring that not every case in which small errors occur must be retried. See Dennis J. Sweeney, An Analysis of Harmless Error in *110 Washington: A Principled Process, 31 Gonz. L.Rev. 277, 278 (1995-96). But even within the confines of harmless error analysis, the focus should be on the fairness of whatever process was received. Id. at 281. When the error at issue has deprived the petitioner of what we have declared is a minimum level of process, it cannot be said that despite that error the process was fair. In this case, instead of reviewing the facts and determining what the governor could have fairly found in the course of a hearing, the majority has determined what the governor would have found in the event a hearing had been held at all.
¶ 28 While we have rejected the contention that all errors deemed per se prejudicial on direct review are equally so on collateral review, we still recognize that some constitutional violations will always be prejudicial. In re Pers. Restraint of St. Pierre, 118 Wash.2d 321, 329, 823 P.2d 492 (1992) (declining to adopt a rule expressed in dicta that would have made the per se prejudicial standard the same for direct and collateral review) (citing In re Pers. Restraint of Boone, 103 Wash.2d 224, 233, 691 P.2d 964 (1984)). We require a hearing before the deprivation of a liberty interest to assure that revocation is based on verified facts and informed by accurate knowledge of the petitioner's behavior. See Morrissey v. Brewer, 408 U.S. 471, 484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In this case, the required hearing acts as a check on the unfettered discretion of the current governor in revoking a commutation that was granted by a previous governor. In my view, the right to a predeprivation hearing is so fundamental that the failure to provide one falls easily within those constitutional rights we recognized in St. Pierre. Failure to provide a hearing when one is required is always prejudicial.
¶ 29 I would hold that the governor must hold a hearing before revoking Bush's commutation. I would further hold that when a predeprivation hearing is constitutionally required, failure to provide that hearing is per se prejudicial. Bush's case should be remanded to the governor so that she may make her decision on revocation based on facts presented during the course of a fair hearing.
¶ 30 I dissent.
I CONCUR: RICHARD B. SANDERS, Justice.
NOTES
[1] The commutation contains 14 numbered "conditions" in addition to the "no felonies" condition, but these appear to be the terms of Bush's community custody. PRP Ex. D at 2. The commutation itself provides that violation of one of these 14 numbered conditions will "result in sanctions deemed appropriate by the Department of Corrections," not in revocation of the commutation. Id.
[2] Contrary to the State's suggestion, this court has never before decided if due process attaches to revocation of conditional commutations. In arguing that this court has held that due process does not attach, the State points to three conditional pardon cases: Spencer v. Kees, 47 Wash. 276, 91 P. 963 (1907); In re Habeas Corpus of Costello, 22 Wash.2d 697, 157 P.2d 713 (1945); In re Habeas Corpus of Henry, 21 Wash.2d 283, 150 P.2d 693 (1944). None of these cases analyzed conditional pardons in a due process framework; indeed, none of the cases ever cites a constitutional due process provision. Instead, the cases simply hold that under the Washington Constitution's pardon provision and the applicable pardon statute, the governor has the power to revoke a conditional pardon without a hearing "when [she is] satisfied that the conditions of the pardon [are] being violated." Spencer, 47 Wash. at 281, 91 P. 963; see Costello, 22 Wash.2d at 702-03, 157 P.2d 713 (quoting Spencer, 47 Wash. at 280-81, 91 P. 963); see also Henry, 21 Wash.2d at 286, 150 P.2d 693 (citing Spencer). The cases do not resolve due process questions.
[3] This is true unless the constitutional error in question is not subject to harmless error analysis. State v. Kitchen, 110 Wash.2d 403, 413, 756 P.2d 105 (1988).