# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In re the Personal Restraint of:<br><br>ROBERT ANDRE FRAZIER,<br><br>                            Petitioner. | No.  51106-1-II<br><br>UNPUBLISHED OPINION |

Lee, J. — Robert A. Frazier filed a personal restraint petition (PRP) challenging the actions of the Indeterminate Sentence Review Board (ISRB) in revoking his parole for a third time.  Frazier argues that he was not afforded due process at his parole revocation hearing because (1) the ISRB considered evidence that had been suppressed in a separate criminal prosecution due to the government's failure to comply with its *Brady*[1] obligations, (2) the ISRB should not have been able to consider his assault of an arresting officer as the basis for his parole violation, (3) he was provided ineffective assistance of counsel at his parole revocation hearing, and (4) the ISRB member who presided over his case was not fair and impartial.  We deny Frazier's petition.

## FACTS

In 1981, Frazier was convicted of first degree murder and sentenced to the maximum term of life in prison.  The ISRB granted Frazier parole for the third time[2] on August 11, 2015.

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[2] Frazier was first released from custody on parole in November 2009.  The ISRB revoked his parole in September 2011 after finding him guilty of attempting to possess a stolen vehicle and

A.    THE INVESTIGATION

Shortly after Frazier's release on parole in 2015, a confidential informant (CI) contacted the Washington Department of Corrections (DOC) with information that Frazier was violating the conditions of his parole. The CI met with Community Correction Specialist (CCS) Kris Rongen and Community Corrections Officer Leslie O'Conner on November 6, 2015. The informant told the officers that a homicide had taken place a few days earlier and that Frazier was in possession of a firearm and seeking retribution for the victim's death.

A few days later, on November 15, the CI contacted CCS Rongen and told him that Frazier was staying at a motel in south Seattle. The next day, CCS Rongen set up surveillance at the motel and saw Frazier loading a black SUV in the motel parking lot. Had Frazier been residing at the motel, this would have violated the terms of his parole.

On November 17, CCS Chad Winfrey accompanied CCS Rongen and CCS Conaty to apprehend Frazier for suspected parole violations. The officers arrived at the motel and saw Frazier backing his vehicle into a parking stall. CCS Rongen and CCS Conaty positioned their vehicle in front of Frazier's in order to block him. CCS Winfrey then pulled his marked vehicle toward Frazier in order to assist the other officers. Frazier responded by driving his vehicle into the driver's side door of CCS Winfrey's vehicle. Frazier then got out of his vehicle and ran, but was quickly apprehended.

---

conspiring to deliver methamphetamine and cocaine. He was paroled again September 2012, and the ISRB revoked his parole again in August 2013 after finding him guilty of two counts of possession of a deadly weapon.

After Frazier was in custody, the officers searched Frazier's vehicle. They found a backpack in the backseat with a loaded handgun wrapped in a towel. Later that evening, CCS Winfrey returned to the motel and searched the room where Frazier had allegedly been staying. There, he found a substance he believed to be methamphetamine.

B.  FEDERAL CHARGES

Frazier was subsequently charged in federal court with one count of Felon in Possession of a Firearm.[3] On the eve of trial, the Government produced evidence showing that the CI who had provided information about Frazier was also on community custody, had been suspected of violating his community custody conditions, and had failed a polygraph test during the investigation of Frazier. This evidence also showed that the CI had admitted to lying to his supervising CCO and had admitted to ongoing criminal activity.

Following this late disclosure, Frazier moved to suppress any evidence derived from the CI. Finding that the Government had "plainly suppressed" evidence related to the CI until the eve of trial and well after the CI's death, the trial court granted Frazier's motion. Pers. Restraint Petition (PRP) Ex. B at 6. The order suppressing the evidence characterized the Government's conduct as "unabashedly negligent" and in violation of its *Brady* obligations. PRP Ex. B at 7. Because all of the Government's proffered evidence against Frazier was derived from the CI, the trial court dismissed the federal indictment.

_____

[3] 18 U.S.C. § 922(g)(1) (2012).

C. ISRB PAROLE VIOLATION HEARING

Frazier's parole was suspended on November 17, 2015 based on the investigation discussed above. Frazier allegedly committed the following violations of his parole:

1. Failing to reside at DOC approved residence on or about 11-17-2015.
2. Failing to obey all laws by having [in] his control a firearm after having previously been convicted of a serious offense as defined in per RCW 9.41.040, on or about 11-17-2015.
3. Failing to abide by conditions of release by possessing ammunition on or about 11-17-2015.
4. Failing to obey all laws by assaulting DOC Specialist Winfrey, while he was performing his official duties, per RCW 9a.36.031, on or about 11-17-2015.
5. Failing to abide by conditions of release by possessing methamphetamine on or about 11-17-2015.

PRP Ex. A at 1.

On October 20, 2016, the ISRB held a parole violation hearing on Frazier's alleged parole violations. Because the Chair of the ISRB was married to one of the officers involved in Frazier's case, she immediately recused herself. Frazier was present at the hearing and represented by counsel.

Frazier moved to suppress evidence supporting violations 1, 2, 3, and 5 based on the same grounds in his Federal case. The presiding ISRB Member denied Frazier's motion and ruled that it would hear all of the evidence against him.

Frazier entered a guilty plea to violation 4—failing to obey all laws by assaulting DOC Specialist Winfrey. Frazier pleaded not guilty to the other four alleged violations.

CCS Conaty, CCS, Rongen, and CCS Winfrey testified at the parole violation hearing to the facts discussed above. Frazier also testified and denied that he had moved from his approved residence. Frazier denied ever staying the night at the motel and testified that the car he was

driving belonged to a friend. As to his assault of CCS Winfrey, Frazier pleaded guilty with an explanation. Frazier admitted that he drove his vehicle into CCS Winfrey's vehicle, but testified that he had panicked and that he did not notice the van until he hit it.

The ISRB found Frazier not guilty on alleged violations 1, 2, 3, and 5. As to violation 4, the ISRB accepted Frazier's guilty plea. The ISRB concluded that Frazier had violated the conditions of his parole by failing to obey all laws when he assaulted CCS Winfrey and that it would be in the best interest of the public for Frazier to be returned to custody with a new minimum term. In its reasons for decision, the ISRB stated that Frazier was found guilty of a very serious violation and could have seriously injured CCS Winfrey. The ISRB also stated that Frazier had demonstrated a repeated lack of prosocial behavior and was not fit for release in the community. The ISRB concluded, "Until he is willing to live a prosocial lifestyle, follow the law, and stop blaming others for his predicament, he should remain incarcerated." PRP Ex. A at page 8.

## ANALYSIS

A.  STANDARD OF REVIEW

To prevail on a PRP challenge of an ISRB decision, a petitioner must show that he is under restraint and that his restraint is unlawful. RAP 16.4(a). Restraint is unlawful when, "[t]he conviction was obtained or the sentence or other order . . . was imposed or entered in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4(c)(2).

B.      SUPPRESSION OF EVIDENCE BASED ON *BRADY*

Frazier argues that the ISRB violated his due process rights by revoking his parole based on evidence that was suppressed in a separate criminal proceeding due to *Brady* violations. We disagree.

1.      Procedural Due Process in a Parole Revocation Hearing

We have recognized a liberty interest in avoiding revocation of parole. *In re Pers. Restraint of Bush*, 164 Wn.2d 697, 703, 193 P.3d 103 (2008); *In re Pers. Restraint of Lain*, 179 Wn.2d 1, 15, 315 P.3d 455 (2013). This liberty interest arises from the parolee's justifiable reliance on an implicit promise that parole will only be revoked if he or she fails to comply with the conditions of parole. *Bush*, 164 Wn.2d at 704; *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972).

The United States Supreme Court has recognized that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey* at 480. However, "most States have recognized that there is no interest on the part of the State in revoking parole without any procedural guarantees at all." *Id.* at 484; *See* RCW 9.95.120.

The Fourteenth Amendment of the United States Constitution guarantees that the State will not deprive a parolee of this protected liberty interest without appropriate procedural safeguards. *Lain*, 179 Wn.2d at 18; *Bush*, 164 Wn.2d at 704. In *Morrissey*, the United States Supreme Court outlined the minimal procedures required to satisfy due process in parole revocation proceedings, which include: (1) written notice of the alleged violation of parole, (2) disclosure of evidence against the parolee, (3) opportunity to be heard in person and present witnesses, (4) the right to

6

confront and cross-examine adverse witnesses, unless there is good cause for not allowing confrontation, (5) "a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers," and (6) a written statement of the factfinders as to the evidence relied upon and the reasons for revoking parole. 408 U.S. at 489. The Court emphasized that

> there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

*Id.*

### 2. Due Process

In *Brady*, the United States Supreme Court articulated the government's disclosure requirements in a criminal prosecution—"the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Violation of the rule promulgated in *Brady* is a violation of a defendant's constitutional due process rights. *State v. Mullen*, 171 Wn.2d 881, 893, 259 P.3d 158 (2011).

Frazier does not ask us to extend the rule promulgated in *Brady* to parole violation hearings, nor does he argue that the ISRB failed to disclose the evidence against him prior to his parole violation hearing. Instead, he argues that due process requires the ISRB to suppress evidence in a parole violation hearing that was previously suppressed in a separate criminal prosecution due to the Government's failure to comply with its *Brady* obligations. This argument misunderstands the purpose of *Brady* and the nature of the government misconduct in his criminal prosecution.

" 'The animating purpose of *Brady* is to preserve the fairness of criminal trials.' " *Mullen*, 171 Wn.2d at 895 (quoting *Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006)). The *Brady* rule is not meant to " 'displace the adversary system.' " *Id.*(quoting *Morris,* 447 F.3d at 742) It only obligates the prosecutor to disclose " 'evidence favorable to the accused, that, if suppressed, would deprive the defendant of a fair trial.' " *Id.* (emphasis omitted) (quoting *Morris,* 447 F.3d at 742).

Frazier does not explain how suppressing the evidence against him in his parole violation hearing would further the animating purpose of *Brady* to ensure fairness in criminal trials. Instead, he argues that "facts that were the basis for a dismissal of criminal charges due to a Brady violation" cannot be used against him "in a parole revocation hearing regarding the exact same facts and governmental misconduct." PRP at 18. But the government misconduct that led to dismissal of Frazier's criminal charge was the government's failure to disclose evidence to Frazier until the eve of his trial, not the propriety of the search itself. And Frazier does not dispute that this evidence was disclosed to him well before his parole violation hearing. Moreover, Frazier fails to show how this evidence was material to his parole violation hearing when, after considering the evidence, the ISRB actually found him not guilty on all of the violations that this evidence supported.[4]

---

[4] Frazier also appears to argue that his due process rights were violated because he was unable to cross examine the CI at his ISRB parole violation hearing. The minimal procedural safeguards to satisfy due process include the right to confront and cross examine adverse witnesses, unless there is good cause for not allowing such confrontation. *Morrissey*, 408 U.S. at 489. Given that the CI had died by the time of his parole violation hearing, there was good cause for not allowing this confrontation, which satisfies the minimum due process requirements in parole revocation hearings. *See id.* Also, even if there was a due process violation, Frazier fails to show any prejudice because the ISRB found him not guilty on all violations except the violation he admitted to violating.

Because the evidence presented against Frazier in his parole violation hearing was disclosed well before the hearing and because Frazier fails to explain why procedural due process demands evidence suppressed in a separate criminal prosecution also be suppressed in an administrative parole violation hearing, Frazier's due process claim fails.

## C.     THE EXCLUSIONARY RULE

Although Frazier expressly asserts that his petition is based solely on his due process and *Brady* claims, "not under the exclusionary rule, the Fourth Amendment, or an illegal search and seizure," he still argues that any "charges stemming" from his unlawful arrest should have been suppressed as fruit of the poisonous tree. Reply Br. of Pet'r at 5; PRP at 26. Assuming that Frazier is actually basing his petition in part on the exclusionary rule, this argument is without merit.

Evidence obtained during an illegal search is generally suppressed under the exclusionary rule in a criminal trial. *State v. Betancourth*, 190 Wn.2d 357, 364, 413 P.3d 566 (2018). This includes the evidence initially seized and any evidence derived from that illegal search as fruit of the poisonous tree. *Id.*

In the context of parole violation hearings, the United States Supreme Court has held that the exclusionary rule does not extend to the state parole systems. *Pennsylvania Bd. of Prob. and Parole v. Scott*, 524 U.S. 357, 364, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998). This is because application of the exclusionary rule in state parole systems would "alter the traditionally flexible, administrative nature of parole revocation proceedings." *Id.*

Frazier states that his petition is "not under the Fourth Amendment exclusionary rule," and he does not ask us to extend operation of the exclusionary rule to parole revocation proceedings. Reply Br. of Pet'r at 7. Nonetheless, Frazier argues that the ISRB should have suppressed "all

9

actions and evidence stemming" from his arrest after the ISRB determined his arrest was unconstitutional. PRP at 25.

Contrary to Frazier's assertion, the ISRB never ruled that Frazier's arrest was unconstitutional. The ISRB similarly never ruled that the arresting officers did not have a well-founded suspicion to believe that Frazier was violating a condition of his parole. Instead, the ISRB considered the evidence obtained through the arrest that Frazier claims to be unconstitutional and ruled that it was insufficient to show that Frazier had changed his residence in violation of his parole. Thus, the ISRB never suppressed evidence under the exclusionary rule, but instead found Frazier not guilty of this violation after considering the evidence that Frazier challenges.

And even if the ISRB had ruled that Frazier's arrest was unconstitutional, the exclusionary rule applies to evidence derived from an illegal search, not Frazier's independent criminal charges. *See State v. Mierz*, 127 Wn.2d 460, 473, 901 P.2d 286 (1995) (holding that evidence of the defendant's assaultive behavior was properly admitted regardless of any alleged Fourth Amendment violation); *State v. D.E.D.*, 200 Wn. App. 484, 496, 402 P.3d 851 (2017) (holding that the defendant's passive resistance to arrest was consistent with his duty to cooperate, but that more active resistance could rise to the level of obstructing a public servant). Frazier cites to no authority allowing him to resist arrest and assault a law enforcement officer because he believes his arrest is unlawful. Instead, he blames the arresting officers for his actions and claims that he never would have assaulted them but for their "egregious misconduct." Reply Br. of Pet'r at 5. However, this argument also fails because the "egregious misconduct" Frazier refers to is the State's subsequent *Brady* violations, which were unrelated to the propriety of his arrest to begin

with. Reply Br. of Pet'r at 5. Thus, Frazier's argument on this basis is without merit, and we reject his due process claim on this basis.

D.     INEFFECTIVE ASSISTANCE OF COUNSEL

Frazier argues that he was denied effective assistance of counsel during his parole violation hearing because his attorney failed to review documents related to his dismissed criminal case prior to the parole violation hearing. We disagree.

1.     Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the accused the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). An ineffective assistance of counsel claim is a mixed question of law and fact that we review de novo. *State v. Jones*, 183 Wn.2d 327, 338, 352 P.3d 776 (2015).

In *Strickland v. Washington*,[5] the United States Supreme Court outlined the prevailing standard to reverse a criminal conviction based on an ineffective assistance of counsel claim. 466

---

[5] Even though parole revocation is not a stage of a criminal prosecution, it does result in a loss of liberty. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). We have held that if a convicted offender faces an allegation that may result in a return to prison after being released into the community, then the hearing authority must evaluate a request for appointment of counsel on a case-by-case basis. *Grisby v. Herzog*, 190 Wn. App. 786, 805, 362 P.3d 763 (2015). This is required "because there are occasions when, by virtue of the offender's individual circumstances, he would be deprived of procedural due process if counsel were not appointed to present his case." *Id.* However, no Washington case has expressly held that the same test for ineffective assistance of counsel in criminal cases applies in parole violation hearings.

Frazier assumes that the *Strickland* standard applies here. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Because Frazier cannot establish ineffective assistance of counsel even under the *Strickland* test, we assume without deciding that the

No. 51106-1-II

U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). This entails a two-pronged inquiry in which the defendant must show (1) counsel's performance was deficient and (2) " 'the deficient performance prejudiced the defense.' " *Grier*, 171 Wn.2d at 32-33 (quoting *State v. Thomas*, 109 Wn.2d 222, 225, 743 P.2d 816 (1987)). An ineffective assistance claim fails if the defendant fails to satisfy either prong. *Strickland*, 466 U.S. at 697.

          2.       Frazier is Unable to Show Prejudice

Frazier fails to show resulting prejudice. Frazier argues that there is a reasonable probability that the outcome of the proceedings would have differed because the cross examination of the officers' testifying at the hearing "would have been remarkably different" had counsel read the documents. PRP at 34. He argues that if he could have cross examined the officers based on the information contained in these reports, then there is a reasonable possibility that the ISRB would have found Frazier not guilty of the parole violation.

Frazier's argument fails to acknowledge that the ISRB only found Frazier guilty of the parole violation that he pleaded guilty to—assaulting one of the arresting officers. In fact, the ISRB found Frazier not guilty of the four alleged violations that were supported by the officers' testimony. Thus, even if Frazier could have more effectively cross examined the officers with the contents of these documents, the result of the proceeding would have been the same—a not guilty

*Strickland* standard of review applies for ineffective assistance of counsel claims in parole violation hearings.

12

finding on the four alleged violations. Therefore, Frazier fails to show resulting prejudice. Accordingly, we deny Frazier's PRP on this basis.[6]

E.      IMPARTIALITY OF THE PRESIDING BOARD MEMBER

Frazier asserts that the presiding ISRB member at his parole violation hearing was potentially biased because she had served on the ISRB with the wife of one of the lead officers in his case. He claims that this violated his due process right to a hearing before a fair and impartial independent officer.

A petitioner must support his petition with facts and evidence. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010). He may not rely solely upon conclusory allegations. *Id.*; RAP 16.7(a)(2)(i). When the "petitioner's allegations are based on matters outside the existing record, the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992). "If the petitioner's evidence is based on knowledge in the possession of others, he may not simply state what he thinks those others would say, but must present their affidavits or other corroborative evidence. The affidavits . . . must contain matters to which the affiants may competently testify." *Id.* And the petitioner must show that his "factual allegations are based on more than speculation, conjecture, or inadmissible hearsay." *Id.*

---

[6] Frazier raises for the first time in his reply brief that he is really moving to withdraw his guilty plea. We do not consider issues raised for the first time in a reply brief. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Frazier asserts that the presiding ISRB member at his parole violation hearing could not be fair and impartial because she had served on the Board with the lead officer's wife for a year and a half. However, he fails to support this allegation with facts or evidence showing that the presiding ISRB member could not be fair and impartial. Instead, he speculates that the conflicted Chair of the Board "had plenty of opportunity" to discuss this case with other Board members, including the one who presided over his hearing. Reply Br. of Pet'r at 11. But, again, he fails to provide any evidence of these opportunities and fails to show that the conflicted Board member actually discussed his case with any of the other ISRB members. Because Frazier fails to identify any material evidence showing that the presiding ISRB member could not be fair and impartial, his challenge to the impartiality of the presiding ISRB member fails.

We deny Frazier's petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Bjorgen, J.

Max, C.J.